BELLOWS FARMS, INC. & OTHERS *vs.* BUILDING INSPECTOR
OF ACTON & OTHERS.

Suffolk.    April 4, 1973. — November 7, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, & KAPLAN, JJ.

*Zoning,* Amendment of by-law or ordinance. *Statute,* Construction. *Equity Pleading and Practice,* Decree.

Where, after a plan of a parcel of land in a zoning district of a town wherein apartments were permitted had been submitted to the planning board under G. L. c. 41, § 81P, notice thereof had been given to the town clerk, and the plan had been indorsed by the planning board "approval under the subdivision control law . . . not required," the town adopted amendments of its zoning by-law not changing the permitted apartment use but establishing off street parking and loading requirements and an "Intensity Regulation Schedule" and requiring site plan approval by the selectmen, it was held that G. L. c. 40A, § 7A, as amended through St. 1963, c. 578, protecting for a certain period the "use" of the parcel permissible at the time of submission of the plan, did not preclude such amendments from being applicable to the parcel, even though the amendments, as applicable, would substantially reduce the number of apartments allowed on the parcel. [254-262]

In interpreting statutes, it is often helpful to examine their titles for language which might be indicative of legislative intent. [258-259]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on June 20, 1972.

The suit was heard·by *Hennessey,* J.

*Charles G. Kadison, Jr.* (*Louis N. Levine* with him) for the plaintiffs.

*Acheson H. Callaghan, Jr.* (*Reginald H. Howe* with him) for the defendants.

QUIRICO, J.   This is a bill in equity under G. L. c. 231A, seeking a declaration whether certain amendments to the

---

zoning by-law of the town of Acton (town) apply to a parcel of land (locus) owned by the plaintiffs Bellows Farms, Inc. and John E. Murphy and on which the plaintiff Donald P. O'Grady has contracted to build 402 apartment units. The defendants are the town, its building inspector and the members of its board of selectmen.

The case was submitted to a single justice of this court for entry of a final decree on the basis of a statement of agreed facts constituting a case stated and it is now before us on the plaintiffs' appeal from that final decree.

On March 5, 1970, the plaintiffs submitted a plan of the locus to the town's planning board for the board's indorsement on the plan that "approval under the subdivision control law is not required." General Laws c. 41, § 81P, inserted by St. 1953, c. 674, § 7, as amended through St. 1963, c. 363, § 1, authorizes such an indorsement on a plan which does not show a "subdivision" as defined in G. L. c. 41, § 81L. The plan did not show such a subdivision.[1] The plaintiffs then seasonably notified the town clerk in writing, in the manner required by G. L. c. 41, § 81T, inserted by St. 1953, c. 674, § 7, as amended through St. 1963, c. 363, § 2, that they had submitted the plan to the planning board. On March 10, 1970, the planning board indorsed the plan in the manner requested by the plaintiffs.

At all times material to this case the town's zoning by-law has classified the locus as within a general business district. At all times prior to March, 1971, the by-law expressly permitted land in such a district to be used, as a matter of right and not merely by special permit, for the purpose of apartments, among other uses not here material.

More particularly, under the zoning by-law in effect on March 5, 1970, the plaintiffs were entitled to building permits for the erection of a maximum of 435 apartment units

[1] General Laws c. 41, § 81L, inserted by St. 1953, c. 674, § 7, as amended through St. 1965, c. 61, defines the word "subdivision" to mean in part "the division of a tract of land into two or more lots . . .; provided, however, that the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on . . . a public way . . .." The locus as shown on the plan in question had such a frontage.

on the locus. They intended then and still intend to build a total of 402 such units on the locus, and they have obtained permits to build thirty such units which are now under construction. They are ready to apply, and intend to apply, for a permit to construct the additional 372 apartment units on the locus; this proposed construction would comply with all of the requirements of the zoning by-law in effect on March 5, 1970.

However, at its annual town meeting in March, 1970, held after the filing of the plaintiffs' plan with the planning board on March 5, 1970, the town adopted amendments relating (a) to off street parking and loading requirements, and (b) to the "Intensity Regulation Schedule" applicable to multiple dwelling units. In 1971 the town adopted amendments to make the use of premises for multiple dwellings subject to a provision requiring prior approval of the "site plan" by the board of selectmen.[2] If these amendments are applicable to the locus, they would materially limit and otherwise affect the plaintiffs' intended construction of the 402 apartment units by reducing the number of such units permitted to be built on the locus to 203, assuming each unit had two bedrooms.

The plaintiffs contend that the 1970 and 1971 amendments to the zoning by-law are not applicable to the locus with respect to their planned construction of apartment units and they base their contention on the second paragraph of G. L. c. 40A, § 7A, inserted by St. 1957, c. 297, as amended through St. 1963, c. 578. (A later amendment by St. 1965, c. 65, made no change in the second paragraph of § 7A.) The pertinent language of that paragraph is the following: "When a plan referred to in . . . [G. L. c. 41, § 81P, viz., a plan which does not show a subdivision and must therefore be indorsed by the planning board with the legend "approval under the subdivision control law is not required"] has been submitted to a planning board and written notice of such submission has been given to the city or town clerk, *the use*

---

[2] This provision was first adopted in 1970 but was then applicable only to business and industrial buildings and uses.

*of the land* shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan . . . for a period of three years from the date of endorsement by the planning board that approval under the subdivision control law is not required . . . provided that a city or town may . . . increase the number of permitted uses of any land shown on such a plan'' (emphasis supplied). The plaintiffs argue that the effect of this paragraph is that for the period of three years from March 10, 1970, when the planning board indorsed on the plaintiffs' plan the legend that it did not require approval under the subdivision control law, the locus was governed for all purposes by the provisions of the zoning by-law in effect on March 5, 1970, when the plan was submitted to the board.

The defendants, on the other hand, contend that both the 1970 and the 1971 amendments to the zoning by-law are applicable to the plaintiffs' planned construction of additional apartment units on the locus. They argue that the statutory protection given to the plaintiffs under § 7A is limited to the ''use of the land'' for the purposes permitted on March 5, 1970, and that it does not include protection against any other changes in the by-law. The defendants concede that by virtue of § 7A the plaintiffs may continue to use the locus for apartment units for three years from March 10, 1970, but they argue the 1970 and 1971 amendments to the by-law control as to the intensity of the use and as to the new requirement for site plan approval.

Upon consideration of the history and language of § 7A and of related statutes we hold that the defendants' contention is correct and that the plaintiffs' locus is subject to the 1970 and 1971 amendments to the zoning by-law.

1. When G. L. c. 40A, § 7A, was first enacted by St. 1957, c. 297, it provided that ''[n]otwithstanding any other provision of law, no amendment to any zoning ordinance or by-law shall apply to or affect any lot shown on a definitive subdivision plan for residences which has been previously approved by a planning board until a period of three years

from the date of such approval has elapsed . . .." Section 7A was amended by St. 1959, c. 221, by the addition of a provision that the land shown on a preliminary subdivision plan "shall be governed by the zoning ordinance or by-law in effect at the time of the submission of the preliminary plan . . .; provided, that the definitive plan is duly submitted within seven months from the date on which the preliminary plan was submitted and is thereafter duly approved . . .." Thus neither the original nor the amended version of § 7A had any application to plans not requiring approval under the subdivision control law.

2. Section 7A first became applicable to plans not requiring planning board approval when it was amended by St. 1960, c. 291, which added to it a sentence providing in part as follows: "No amendment to any zoning ordinance or by-law shall apply to or affect any lot shown on a plan previously endorsed with the words 'approval under the subdivision control law not required' or words of similar import, pursuant to . . . [G. L. c. 41, § 81P], until a period of three years from the date of such endorsement has elapsed . . .."

3. Section 7A was further amended by St. 1961, c. 435, § 2, by (a) making certain revisions in the first paragraph dealing with plans requiring planning board approval and (b) eliminating entirely the sentence which had been added by St. 1960, c. 291, relating to plans not requiring planning board approval.

Statute 1961, c. 435, § 1, simultaneously amended G. L. c. 40A, § 5A, by extending to owners of certain lots shown on plans indorsed "approval under the subdivision control law not required" the right to use such lots for residential purposes for five years after indorsement, notwithstanding the adoption or amendment of provisions of a zoning ordinance or by-law imposing minimum area, frontage, width, depth or yard requirements in a residential district. Section 5A as previously inserted by St. 1958, c. 492, had given substantially the same right, without limit as to time, but limited to owners of certain lots "laid out by plan or deed duly recorded or registered in the appropriate registry of deeds or

land registry district," and without express reference to or inclusion of land shown on plans not requiring planning board approval.

4. In 1963 the Legislature, by St. 1963, c. 578, restored to § 7A the provision dealing with land shown on plans not requiring planning board approval but with certain changes in language. The previous version, inserted by St. 1960, c. 291, had provided: "No amendment to any zoning ordinance or by-law shall apply to or affect *any lot* shown on a plan . . . [not requiring planning board approval for a period of three years] . . ." (emphasis supplied). The present version as restored in 1963 provides: "*[T]he use of the land* shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan . . . for a period of three years . . ." (emphasis supplied).

The difference between the earlier (1960) and the later (1963) versions of this part of § 7A is obvious and significant. This is not a case of using different language to convey the same meaning. The use of the different language in the current statute indicates a legislative intent to grant a more limited survival of pre-amendment rights under amended zoning ordinances and by-laws. We cannot ignore the fact that although the earlier statute protected without restriction "any lot" shown on a plan from being affected by a zoning amendment, the later statute purports to protect only "the use of the land" shown on a plan from the effect of such an amendment. None of the words of the present statute should be treated as superfluous. *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 352 Mass. 617, 618 (1967).

5. In interpreting statutes we have often found it helpful to examine their titles for language which might be indicative of the legislative intent. "While the title to a statute cannot control the plain provisions of the enactment, it may aid in the construction of doubtful clauses." *Cumberland Farms, Inc.* v. *Milk Control Commn.* 340 Mass. 672, 678 (1960). *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the*

*Dept. of Community Affairs,* 363 Mass. 339, 352-353 (1973). In *Smith* v. *Board of Appeals of Needham,* 339 Mass. 399 (1959), when this court was first required to interpret G. L. c. 40A, § 7A, which had been inserted by St. 1957, c. 297, we quoted the title of c. 297 and said, at p. 401, "The title sets forth clearly and plainly the single object and aim of the statute if any were necessary to its construction."

If we follow that approach in interpreting the statutes involved in the present case we note a significant difference in the title of St. 1960, c. 291, which first enacted the provision of G. L. c. 40A, § 7A, now contained in the second paragraph thereof, and that of St. 1963, c. 578, which restored this provision in changed language after it had been repealed in 1961. The 1960 title was "*An Act exempting certain lots* for which approval under the subdivision control law is not required from the effect of subsequent amendments to zoning ordinances and by-laws," whereas the 1963 title was "*An Act limiting the exemption of lots* shown on certain plans from the effect of zoning ordinances or by-laws becoming effective after the submission of such plans to the planning board" (emphasis supplied as to both titles). The title of the 1960 statute indicates a legislative intent to establish an unqualified exemption of certain lots from later amendments to zoning ordinances or by-laws, whereas the title of the 1963 statute indicates an intent to impose a limitation on an exemption then or previously in effect. While this difference in title is not controlling, it is a persuasive factor in support of a conclusion that the Legislature did not intend the 1963 statute to have the same effect as the 1960 statute.

6. The plaintiffs apparently base their arguments in part on our decisions in *Smith* v. *Board of Appeals of Needham,* 339 Mass. 399 (1959), and *Vazza* v. *Board of Appeals of Brockton,* 359 Mass. 256 (1971), which involved land shown on plans requiring planning board approval under the subdivision control law. They were therefore governed by what is now the first paragraph of G. L. c. 40A, § 7A, as amended, and not by the present second paragraph which governs the plaintiffs' land.

The first paragraph of § 7A, as amended through St. 1965, c. 366, § 1, provides that when a plan requiring planning board approval under the subdivision control law is submitted to the board for such approval, "the land shown . . . [on such a plan] shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of submission of the plan first submitted while such plan or plans are being processed . . . [and] said provisions . . . shall govern the land shown on such approved definitive plan, for a period of seven years from the date of endorsement of such approval notwithstanding any other provision of law . . . .." This language giving the land shown on a plan involving a subdivision protection against all subsequent zoning amendments for a seven year period is obviously much more broad than the language of the present second paragraph of § 7A covering land shown on a plan not involving a subdivision. We have already noted above that the latter paragraph gives protection for a period of three years against zoning amendments relating to "the use of the land," and that this means protection only against the elimination of or reduction in the kinds of uses which were permitted when the plan was submitted to the planning board. Because of this significant difference in the language of the two paragraphs of § 7A, the three decisions interpreting the language now contained in the first paragraph and cited by the plaintiffs do not support their contentions in this case.

7. The 1970 amendment to the zoning by-law did not eliminate the erection of apartment units from the list of permitted uses in a general business district, nor did it change the classification of the locus from that type of district to any other. It changed the off street parking and loading requirements and the "Intensity Regulation Schedule" applicable to all new multiple dwelling units in a manner which, when applied to the locus, had the effect of reducing the maximum number of units which could be built on the locus from the previous 435 to 203, but that did not constitute or otherwise amount to a total or virtual prohibition of the use of the locus for apartment units. In this important respect the pres-

ent case differs materially from *Nyquist* v. *Board of Appeals of Acton,* 359 Mass. 462 (1971), where the amendment to the zoning by-law purported to eliminate a previously permitted use of the land involved. In this respect the present case differs materially from *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, 492-494 (1964). In that case we held that the town's attempt to impose the dimensional requirements for single family dwellings on the plaintiff's proposed use of land for educational purposes would virtually nullify the exemption from local zoning regulations to which religious and educational institutions were entitled under G. L. c. 40, § 25, as amended by St. 1950, c. 325 (now G. L. c. 40A, § 2). However, we said, at p. 492, that "[p]erhaps there are instances in which, notwithstanding the proviso [of § 2 that "no ordinance or by-law which prohibits or limits the use of land for . . . any educational purpose . . . shall be valid"], a town may impose 'dimensional requirements' upon buildings that serve religious or educational purposes."

The question which we thus left open in the case of *Sisters of the Holy Cross of Mass.* v. *Brookline, supra,* at 492, 495, n. 9, arose in *Radcliffe College* v. *Cambridge,* 350 Mass. 613 (1966). In the latter case we held that an ordinance requiring an educational institution to provide certain parking places in connection with the construction of a library "does not impede the reasonable use of the college's land for its educational purposes . . ." and that it "does not limit 'the use of [its] land for any . . . educational purpose' within the meaning of G. L. c. 40A, § 2." 350 Mass. at 618. The same reasoning supports a conclusion that the 1970 amendments to the town zoning by-law in the present case, governing off street parking and lot area requirements, when applied to the locus do not impede the reasonable use of the plaintiffs' land for apartment unit purposes, notwithstanding the reduced number of units permitted under the by-law as amended.

8. The 1971 amendment to the zoning by-law making the 1970 site plan approval provision applicable to the erection of multiple dwelling units makes no change in the kind of

uses which the plaintiffs are permitted to make of the locus. It does not delegate to the board of selectmen any authority to withhold approval of those plans showing a proposed use of the locus for a purpose permitted by the by-law and which will otherwise comply with the by-law and other applicable legal provisions. Furthermore, the plaintiffs have submitted no site plan to the board of selectmen and we cannot be required to assume that the board will unreasonably or unlawfully withhold approval of such a plan when submitted. Cf. *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 31-32 (1970). We conclude that the 1971 amendment does not reduce or otherwise limit "the use of the land" within the meaning of such words as used in the present second paragraph of G. L. c. 40A, § 7A.

9. The final decree which is the subject of this appeal was entered on February 6, 1973, and it included declarations and orders to the effect that (1) the apartments which the plaintiffs propose to construct must conform with the lot area, parking space and site plan approval requirements in the zoning by-law imposed by the 1970 and 1971 amendments, and currently in effect, and (2) subject to these requirements, the plaintiffs "are entitled . . . to construct apartments on said land for a period of three years from March 10, 1970."[3] The decree is correct in so far as these first two paragraphs are concerned.

Because the zoning by-law had been further amended in 1971 by deleting the word "apartment" from the list of uses permitted in a general business district, the final decree contained an order apparently designed to protect the plaintiffs in their right to construct a total of up to 435 apartment units on the locus in the event this court upheld their contentions on the interpretation of G. L. c. 40A,§ 7A, and also designed to protect the town in the event its contentions were upheld.

The decree essentially provided that pending review of the case by the full court the town shall issue building permits to

---

[3]The decree in part reads as follows: "1. The apartments proposed to be constructed on land within the B-1 General Business District Zone [the locus] as

the plaintiffs for as many apartments "as were permitted by the zoning by-laws in effect on March 10, 1970," and that the plaintiffs could take such action under the permits as is necessary to preserve their validity; but that any work commenced should not exceed $2,500 in total cost without a further order of the court, and the work would be at the plaintiffs' risk and subject to orders for removal if the court may deem it appropriate.[4]

It follows from our holdings above that the maximum number of apartment units which the plaintiffs are entitled to build on the locus is 203. If they have not been granted permits for that number they are entitled to apply for and receive a number which in addition to those already received will amount to that total of 203. If they have received a permit or permits for more than 203 apartment units to be constructed on the locus, the permits in excess of 203 should be declared null and void. If the plaintiffs have started construction on apartment units in excess of 203 on the locus, the construction on the excess must cease and the partial construction thereof be removed.

The final decree is affirmed as to the first two paragraphs thereof. When entering the final decree the single justice anticipated that the third paragraph thereof would require modification after the decision of the case by the full court. The case is therefore remanded to the single justice for the modification of the third paragraph of the decree consistent

---

described in the Statement of Agreed Facts must conform to the applicable lot area, parking space and site plan approval requirements of the zoning by-law of the Town of Acton presently in effect and more particularly described in paragraph 12 of the Statement of Agreed Facts and Exhibits C-1, C-2, C-3 and C-4 appended thereto. 2. Subject to such requirements, the . . . [plaintiffs] are entitled under G. L. c. 40A, § 7A, to construct apartments on said land for a period of three years from March 10, 1970."

"'3. Pending review of this cause by the full court the Town shall issue building permits to the . . . [plaintiffs] for the construction of so many apartments as were permitted by the zoning by-laws in effect on March 10, 1970, and for which applications have been filed with the Building Inspector, subject to approval by the Board of Health of sewage disposal systems for said apartments. The . . . [plaintiffs] may take such action under these building permits as may be necessary to preserve the validity of the permits. Any such work shall be done at the risk of the . . . [plaintiffs] and shall be subject to such further orders for the removal of such work and the restoration of the land as the full court or this court may deem appropriate. Such work shall not exceed $2,500 in total cost, except by further order of the court."

with this decision and the changes which have occurred since the entry of the decree.

*So ordered*