439

**Cirico SORICELLI, Plaintiff**
vs.
**CITY OF QUINCY, Leslie LaHAGE,
Susan LaHAGE, Cormier MARIANO,
Dee Dee MARIANO, Arthur TURNER,
Anna TURNER, Margaret BAILEY,
Barbara BAILEY, Daniel MAY,
Heidi MAY, Defendants**

**No. 101724**

Land Court Department
Trial Court of the
Commonwealth of Massachusetts

**March 18, 1982**

Barry Killian, counsel for plaintiff.
Laurence W. Cauley, counsel for defendant.
Howard R. Palmer, counsel for defendant.

## DECISION

Plaintiff brought this petition in three counts, pursuant to G.L.c. 240, Section 14A, for a determination of the validity of a zoning ordinance which rezoned plaintiff's land from a residence B classification to a residence A classification. Count I claims that since the application for the building permit was made prior to the first publication of notice of a public hearing to change the zoning, the permit should issue as being in accordance with the zoning ordinance in effect of the date of the filing of the application. Count II claims that the building permit should issue since the plaintiff's plan had been endorsed by the Planning Board prior to the date of the rezoning change. Count III claims that the zoning change was "spot" zoning and as such invalid.

Defendant City's answer to Count I asserts that notices of the hearing for rezoning were published before the issuance of the permit and coupled with a warning given on the issuance by the building inspector, the rezoning applies; second, to Count II that even if the endorsement of the Planning Board protected plaintiff's land, it was still subject to bulk and dimensional requirements; and to Count III that the rezoning was valid.

A motion to intervene as party defendants was filed on October 2, 1981 by Leslie LaHage, Susan LaHage, Cormier Mariano, Dee Dee Mariano, Arthur Turner, Anna Turner, Margaret Bailey, Barbara Bailey, Daniel May, and Heidi May and was allowed at the time of trial. They filed no answer as such, adopting that of the City, and took part in the trial.

Trial was held on October 6, 1981. A stenographer was sworn to record and transcribe the testimony in the case. Three witnesses testified and eight exhibits were introduced in evidence and are incorporated herein for the purpose of any appeal.

The plaintiff and the defendant, City of Quincy, filed an "Agreed Statement of Facts" acquiesced in although not signed by the intervening defendants.

On all the evidence the Court finds the following facts:

1. The intervening defendants are owners of residential lots located on the southerly side of Roosevelt Road, Quincy, Massachusetts in an area zoned as Residence A.

2. On August 20, 1980, plaintiff purchased Lots 21 and 22 on the northerly side of Roosevelt Road, shown on Assessor's Plan #1195-B, and on Appendix A.[1] Plaintiff purchased said lots for the purpose of constructing a four-family home thereon, a permissible use in a Residence B zone, but not in a Residence A zone.

---

1. Appendix A is a copy of an Assessors Plan 1195-B (Exhibit 6) to which the Court has added further notations.

3. The whole of the block which includes plaintiff's Lots 21 and 22 is bounded by Adams Street on the north, Old Coach Road on the east, Roosevelt Road on the south and Common Street on the west as shown on Appendix A. This area had been zoned as Residence B for some thirty-seven years. It had remained in the Residence B zone after the extensive rezoning in the City of Quincy in 1971.

4. The blocks to the east, west and south of the block including the locus are located in the Residence A zone, except for a corner of the westerly block facing plaintiff's block which contains 3 houses and is likewise zoned Residence B.

5. Plaintiff hired an architect and builder and prepared plans and specifications to build the 4-family dwelling. On October 7, 1980 he applied for a building permit and paid his fees therefor.

6. Subsequent to plaintiff filing for his permit, City Councillor John Lydon contacted the Quincy planning director and requested that "the Planning Board and City Council publish notice of a public hearing to change the zoning of plaintiff's land from Residence B to Residence A."

7. On October 15, 1980 notice that a public hearing would be held concerning the proposed rezoning of lots 21, 22, 54 and the southerly portion of lot 55, 55A, as shown on Appendix A, from Residence B to Residence A was published.

8. The proposed rezoning would result in the block bounded by Adams, Old Coach, Roosevelt and Common Streets being zoned about ¾ for Residence B and ¼ for Residence A. Reference to Appendix A will show that there is on plot 86 a nine-unit condominium; on plot 30 and 31 one single-family house; on that part of plot 55 facing Adams Street a 2-family house; on plot 53 a four-family house; on plot 17 and plot 10 single-family houses and on plot 85 a water pumping station operated by the City of Quincy. Lots numbered 21, 22, 55A and 54 on Appendix A, the area sought to be rezoned from B to A, are vacant. It is on lots 21 and 22 that plaintiff seeks to build a four-apartment house.

9. On October 29, 1980 the public hearing was held before the Planning Board for the City of Quincy to consider the rezoning of the locus area from Residence B to Residence A. At this hearing the Planning Board refused to recommend that the area be rezoned to a Residence A.

10. On November 3, 1980 there was a second public hearing before the Planning Board and the City Council. At this hearing approximately 30-40 residents of the neighborhood informed public officials that the proposed four-family dwelling would affect the value and appearance of the neighborhood.

11. On November 12, 1980 plaintiff was issued his building permit which was dated October 21, 1980. The plaintiff was advised at this time that the City Council was considering the request to rezone the locus and that he should not begin construction until this issue was resolved.

12. On November 21, 1980 the Director of Planning acting presumedly for the Planning Board endorsed plaintiff's plan entitled "Plan of Land in Quincy, Mass., November 15, 1980 Scale 1"=40' " with the words "Approval Under the Subdivision Control Law Not Required" and the plan so endorsed was recorded in the Norfolk County Registry of Deeds prior to the vote of the City Council rezoning the area on December 15, 1980.

13. On December 15, 1980, the Quincy City Council voted to rezone the land shown on Appendix A as Plots 21, 22, 54 and 55A from Residence B to Residence A.

14. At the trial a resident of the neighborhood testified at some length that the nature and flavor of the area is single-family residential, although Adams Street is a busy thoroughfare in the City of Quincy with commercial uses on it.

I. Does the Land Court have jurisdiction to determine the legality of the building permit?

The Court answers in the affirmative.

The Court has jurisdiction to adjudicate the matters raised by Counts I and II under G.L.c. 231A, § 1 for declaratory judgment. G.L.c. 185, § 1(k)

gives the Land Court original jurisdiction concurrent with the Superior Court in "all cases...cognizable under the general principles of equity jurisprudence when any right title and interest in land is involved..." In proceedings under c. 231A § 1 "...the Land Court...may on appropriate proceedings make binding declarations of right, duty, status, and other legal relations..."

To be applicable G.L.c. 231A requires that there be a controversy. This requirement is satisfied in the instant action as plaintiff has a real interest in constructing his multi-family building and defendants deny that he is protected by either filing prior to first publication of notice or having the endorsement of the Planning Board. See, **School Committee of Cambridge v. Superintendent of Schools of Cambridge,** 320 Mass. 516 (1946).

The Court's jurisdiction to adjudicate this controversy has not been negated by two recent decisions of the Appeals Court, **Neuhaus v. Building Inspector of Marlborough,** Mass. App. Ct. (1981)[2] and **McDonald's Corporation v. Town of Seekonk,** Mass. App. Ct. (1981)[3].

In **Neuhaus, supra,** the plaintiffs sought to have a building permit revoked and did not appeal to the Zoning Board of Appeals but brought an action under M.G.L.c. 231A. The Court ruled that G.L.c. 40A, passed as St. 1975 c. 808, meant exactly what was said in Section 7 thereof, namely that "No action...shall be maintained in any court...except in accordance with the provisions of this section, section eight and section seventeen." Section 8 provides for an appeal to a reviewing board (Board of Appeals) and section 17 provides for an appeal from the Board of Appeals to the Superior Court. This procedure was not followed in **Neuhaus.**

The case of **McDonald's Corporation, supra,** involved a petition for a building permit denied by the building inspector because the Planning Board rejected a parking proposal. The Court ruled that the Superior Court had no jurisdiction to hear the matter without its first having been heard by the Board of Appeals.

Unlike **Neuhaus** and **McDonald's Corporation,** no appeal to an administrative board is either possible or required in the instant action. Plaintiff was granted a building permit and it has not been revoked. Thus, there is no administrative appeal process for him to satisfy before proceeding to this Court. He is simply looking for a determination as to whether or not his permit is subject to the new zoning law.

II. Does the fact that plaintiff filed an application for a building permit prior to publication of notice of a zoning by-law change protect him against the by-law change?

The Court answers this in the negative.

Plaintiff claims in Count I that his permit is valid because the application for it was filed prior to the first publication of notice of the proposed zoning by-law. The mere filing of an application for a building permit prior to such first notice does not give the applicant any vested rights thereto. **Caputo v. Board of Appeals of Somerville,** 330 Mass. 107 (1953). **Collura v. Town of Arlington,** 367 Mass. 881 (1975).

A permit issued after the first publication of notice for a public hearing is subject to zoning ordinances adopted by the City Council within ninety days of that hearing. **Cartensen v. Cambridge Zoning Board of Appeals,** Mass. App. Ct. (1981)[4]. The City of Qunicy was clearly within this 90-day time limit as it adopted the amendment on December 15, 1980, some 17 days after the October 29, 1980 public hearing. (See paragraphs 7 and 10 herein). Thus, the Court rules that the issuance of plaintiff's building permit after publication and prior to the adoption of the amendment does not justify a violation of that amendment.

---

2. Mass. App. Ct. Adv. Sh. (1981) 161.
3. Mass. App. Ct. Adv. Sh. (1981) 1508.
4. Mass. App. Ct. Adv. Sh. (1981) 315.

III. Does the endorsement of the Planning Board of Quincy of plaintiff's plan "Approval Under the Subdivision Control Law Not Required" protect the plan for three years?

The Court answers this in the affirmative.

Plaintiff alleges in Count II that the reclassification from Residence B to Residence A does' not affect his lot because the Planning Board of Quincy endorsed his plan "Planning Board Approval Under the Subdivision Control Law Not Required" on November 21, 1980 and that plaintiff's plan is thus protected for three years thereafter under the provisions of the sixth paragraph of G.L.c. 40A, § 6 which in pertinent part is as follows:

"When a plan referred to in section eighty-one P of chapter forty-one (i.e., a plan which does not require planning board approval under the subdivision control law" has been submitted to a planning board and written notice of such submission has been given to the City or Town Clerk, **the use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan** and for a period of three years from the date of endorsement by the planning board that approval under the subdivision control law is not required, or words of similar import."

(Underlining by the Court for emphasis.)

Section 6 above makes no allowance for notice of a proposed zoning change. The important element is the "ordinance in effect at the time of the submission of the plan". The ordinance in effect on November 21, 1980 when the plan was endorsed by the Planning Board zoned the locus area as Residence B. The fact that it was proposed to change it to Residence A matters not.

"The use of the land" under Section 6 above refers to the kinds of uses permitted when the plan was endorsed by the Planning Board. While these uses cannot be eliminated or reduced, dimensional or intensity requirements may be imposed thereon. **Bellow Farms, Inc. v. Building Inspector of Acton,** 364 Mass. 253, (1975). **Perry v. Building Inspector of Nantucket,** 4 Mass. App. 467, (1976). In **Bellows Farms** the Court held that a zoning change reducing the number of apartment units the plaintiff could build on his lot from 435 to 203 "did not constitute or otherwise amount to a total or virtual prohibition of the use of the locus for apartment units."

In the instant case the situation is different as the zoning amendment changed plaintiff's lot from a Residence B area to a Residence A area, thus making it impossible for plaintiff to build his four-family house. It was not a dimensional or intensity requirement imposed on the use but a prohibition of the use of the locus for apartment units.

The Court rules that the endorsement from the Planning Board protects plaintiff's proposed use of the locus for a period of 3 years from the date of endorsement, November 21, 1980.

IV. Does the rezoning change constitute "spot" zoning?

This question is raised by Count III of the complaint. The Land Court has jurisdiction to hear this case under General Laws, Chapter 240, Section 14A which provides in pertinent part as follows:

"The owner of a freehold estate in possession of land may bring a petition in the Land Court against a city or town wherein such land is situated...for determination as to the validity of a municipal ordinance...passed or adopted under the provisions of chapter 40A..."

The technical requirements of this above statute have been met herein. The question to be determined is the validity of the ordinance itself which was not introduced into evidence but provided that plots 21, 22, 54 and 55A as shown on Appendix A be rezoned from Residence B to

Residence A zone.

The Supreme Court in the case of **Village of Euclid Ohio v. Ambler Realty Co., 272 U.S. 365 (1926)** stated that a zoning ordinance is valid unless it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." A zoning ordinance enjoys a presumption of validity and its enforcement will not be refused unless it is shown beyond a reasonable doubt that it conflicts with the constitution or the enabling statute. **Addison - Wesley Publishing Company, Inc. v. Town of Reading and Others,** 354 Mass. 181 (1968). The City Council of Quincy is a legislative body, and the judgment of this Court will not be substituted for that of the City where the reasonableness of the zoning by-law is fairly debatable. **Burnham v. Board of Appeals of Gloucester,** 333 Mass. 114 (1933). The zoning amendment in question is tested in light of these principles.

Plaintiff's lots 21 and 22, together with lots 55A and 54, were zoned from Residence B (multi-family) to Residence A (single-family). Thus, the rezoning applied to about one quarter of the area of the block - Adams, Old Coach Road, Roosevelt Road Common Street. It changed an area that had been zoned Residence B as an entity for thirty-seven years. The rezoning cut four lots out of a distinguishable block to add them to an area zoned Residence A south across Roosevelt Road and east across Old Coach Road. The new zoning invades a block otherwise zoned and pretty much used for Residence B purposes by cutting out these lots and zoning them more stringently. Whether any person would use the plaintiffs' lot or the two remaining lots 55A and 54 for single-family houses would appear doubtful in light of the other uses in the block.

The facts in this case are very similar to those in **Canteen Corp. v. Pittsfield,** 4 Mass. App. Ct. 289 (1976). In this case twelve contiguous lots were singled out for special treatment. Here four lots were singled out and put with single-family houses across and south of Roosevelt Road. There was no indication that this was done as part of any comprehensive zoning revision; in fact, it was done without being recommended by the Planning Board.

It is also similar to the case of **Schertzen v. Somerville,** 346 Mass. 747 (1963), particularly in the circumstances surrounding the proposed change. In both cases the changes were the result of neighbors objecting to the proposed use.

The Court is loathe to substitute its judgment for that of the legislative body -the City Council. Under the circumstances here, however, the Court believes that the legislative body has exceeded its authority and that the result constitutes spot zoning.

The Court finds and rules that the rezoning which affects plaintiff's lot cannot be viewed as a logical extension of a residential zone and is arbitrary and unreasonable.

To sum up the Court rules - I. that the Court has jurisdiction; II. that the fact that plaintiff filed his application prior to the publication of notice of a zoning change does not protect him against the by-law change; III. that the endorsement of the Planning Board on plaintiff's plan protects plaintiff's locus from zoning change for three years; and IV. that the rezoning is invalid as "spot zoning".

The plaintiff has submitted 12 requests for findings of fact. Numbers 1-4 and 9, 10 and 12 are granted; numbers 5-8 and 11 are denied.

Defendant, City of Quincy has submitted 8 requests for findings of fact, 1-5 are allowed, 6-8 are denied. Defendant has also submitted 9 requests for rulings of law; numbers 1, 3-6 and 7 and 9 are granted and numbers 2 and 8 are denied.

The Court rules that the plaintiff may proceed under the building permit dated October 21, 1980 as his locus is protected from zoning change by G.L.c. 40A, § 6 and the zoning ordinance changing the locus from Residence B to Residence A is invalid.

Judgment accordingly.

**William I. Randall, Chief Justice**