DARYL STAMPFL & another[1] *vs.* ZONING BOARD OF APPEALS OF NORWOOD & others.[2]

No. 90-P-1228.

Norfolk. December 16, 1991. - September 30, 1992.

Present: ARMSTRONG, DREBEN, & IRELAND, JJ.

*Zoning*, Zone boundary, Buffer zone.

Landowners (plaintiffs) who, when they purchased their lot in 1986, were entitled to store equipment and materials on the portion of the lot zoned for manufacturing, subject to a zoning by-law provision requiring them to maintain a seventy-five-foot buffer strip along the residentially zoned portion of the defendant abutters' lot (a portion of which was also zoned for manufacturing) could lawfully continue their storage use under protections afforded by G. L. c. 40A, § 6, without having to extend the buffer strip, notwithstanding that, shortly after the plaintiffs filed a perimeter plan of their property with the local planning board, which received an endorsement "approval not required," the zoning district lines were amended so as to leave the defendant abutters' entire lot zoned residential and the plaintiffs' lot zoned mostly for business. [356-357]

CIVIL ACTION commenced in the Superior Court Department on September 20, 1988.

The case was heard by *Roger J. Donahue*, J., on a statement of agreed facts.

*Daniel R. Seigenberg* for the plaintiffs.

*Paul D. Maggioni* for Leonard Maida & another.

*David A. DeLuca*, Town Counsel, for Zoning Board of Appeals of Norwood, was present but did not argue.

ARMSTRONG, J. The Stampfls and Norwood's zoning board of appeals (board) appeal from a judgment of the Superior Court which, as we interpret it, requires the Stampfls, who

---

[1] Gretchen Stampfl.

[2] Leonard Maida and Dorothy Maida.

use the northerly portion of their lot for open storage of equipment and materials, to maintain a seventy-five-foot buffer strip along the northwestern boundary between their property and that of the abutters to the north, the Maidas.[3]

The Stampfls purchased their lot, roughly one acre, in 1986. The lot was narrow but deep. The southerly portion, bordering the street, was zoned for business. The northerly portion was zoned for manufacturing, which included open storage of equipment and materials as a use either permitted or specially permitted, depending on factors not here relevant. The Maidas' lot, which abuts the Stampfls' lot on the north and northwest (in the shape of an "L" rotated one quarter turn clockwise) was also bisected by a zone line. The easterly portion of their lot, which abutted the Stampfls directly to the north, and where the Maidas' residence was located, was zoned for manufacturing. The westerly portion of their lot, abutting the northern portion of the Stampfls' westerly boundary line, was zoned residential. The Norwood zoning by-law requires the maintenance of a seventy-five-foot buffer strip devoted to plantings and certain limited accessory uses where a manufacturing district abuts a residential district. Hence the Stampfls, when they purchased their lot in 1986, were entitled to use the northerly portion of their lot for open storage of equipment and materials, subject to maintaining a seventy-five-foot buffer strip along their northwesterly boundary, i.e., along the residentially zoned portion of the Maidas' lot. In our view, that continues to be the case, notwithstanding the events that followed.

Shortly after purchasing their lot, the Stampfls filed a plan of their property with the planning board. It was apparently

---

[3] The case is in an awkward procedural posture. Norwood's zoning enforcement officer denied the Maidas' request for enforcement of a buffer strip. The Maidas appealed to the board, which failed to render a decision within the time required by G. L. c. 40A, § 15, fifth par. The Stampfls appealed from the constructive decision in favor of the Maidas. Thereafter the board rendered an actual decision supporting the zoning enforcement officer's determination that the buffer strip by-law was inapplicable. In this court the board supports their actual decision in favor of the Stampfls and opposes their constructive decision for the Maidas.

a perimeter plan and was endorsed "approval not required." Shortly thereafter the zoning district lines were amended in a manner that left the Maidas' lot zoned residential in its entirety and the Stampfls' lot zoned mostly for business, the zone line for which was moved north roughly 140 feet, and with the residential zone being north of that line. (Although the residentially zoned portion of the Stampfls' lot represents only perhaps one-quarter of the lot area, that portion includes the entire boundary line between their property and the Maidas'.)

It is not contested by the Maidas that the Stampfls are entitled to the protection of G. L. c. 40A, § 6, sixth par. (1990 ed.), which provides that when a plan is submitted to the planning board for an endorsement under G. L. c. 41, § 81P, "use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan . . . ." The by-law in effect when the Stampfls submitted their plan permitted them to use the portion of their lot zoned for manufacturing for open storage, subject only to the buffer along the portion of the Maidas' property zoned residential. To require a buffer strip now along the portion of the Maidas' property previously zoned for manufacturing would be, in effect, to treat the Stampfls' use of their land as governed by the by-law amendments that followed the submission of their plan, shrinking the protection given them by G. L. c. 40A, § 6.

The Stampfls contend that, because buffer strips are required only in manufacturing and certain related zones, and their property, where it abuts the Maidas', is zoned residential, they are not required to maintain any buffer strip at all. We reject the contention; it would be ironic if an amendment rezoning property from manufacturing to residential were to permit an extension of the manufacturing use into the previously protected buffer strip. The Stampfls cite *Bellows Farms, Inc.* v. *Building Inspector of Acton,* 364 Mass. 253 (1973), which interpreted the predecessor statute to G. L. c. 40A, § 6, to protect the use of the land shown on a plan (at

260) but not to apply to amendments to dimensional or intensity restrictions that do not unreasonably interfere with the protected use (at 260-261). The buffer zone provision, however, is not, in our view, a dimensional provision. Contrast § 13 of the Norwood zoning by-law that requires a seventy-five foot sideyard and rearyard setback for buildings in a manufacturing zone. Rather, it is a use regulation: in effect, a condition limiting the use of property in a manufacturing zone, so as to protect residentially zoned property by a green belt.

The Stampfls' argument that the application of a buffer zone will, in effect, render their property next to useless for open storage seems to be predicated on an assumption that the judgment requires them to maintain a buffer zone along the entire boundary between their lot and the Maidas'. We do not understand the judgment to do that: it calls for a buffer strip measured "from the district boundary line," which we take to refer to the boundary line between the residential zone and the manufacturing zone at the time of the submission of the plan. (After the zoning amendment of 1986, there was no "district boundary line" between the Maidas' property and the Stampfls'.) So understood, the judgment preserves precisely the uses to which the Stampfls could have devoted their property lawfully at the time of the submission of their plan.

*Judgment affirmed.*