STEVEN L. CICATELLI *vs.* BOARD OF APPEALS OF WAKEFIELD
& another.[1]

No. 01-P-1054.

Suffolk. December 12, 2002. - April 17, 2003.

Present: PORADA, LAURENCE, & TRAINOR, JJ.

*Zoning*, By-law, Amendment of by-law or ordinance, Building permit, Issuance of permit.

In a civil action challenging the defendant zoning board's upholding of a town building inspector's denial of the plaintiff's applications for permits to build houses on two lots, because the proposed construction would contravene a recent zoning by-law amendment, the Land Court judge did not err in concluding that the amendment was a dimensional regulation, the application of which to the plaintiff's lots did not impermissibly deprive him of the protection to which he was entitled under G. L. c. 40A, § 6, sixth par. [801-805]

CIVIL ACTION commenced in the Land Court Department on July 15, 1999.

The case was heard by *Karyn F. Scheier*, J., on a motion for summary judgment.

*James Lamanna* (*George S. Markopoulos* with him) for the plaintiff.

*Thomas A. Mullen* for the defendants.

LAURENCE, J. The plaintiff, Steven L. Cicatelli, appeals a judgment of the Land Court affirming a decision of the board of appeals of Wakefield (board). The board had upheld the Wakefield building inspector's denial of the plaintiff's applications for permits to build houses on two lots. The building inspector had based his denials on his determination that the proposed construction would contravene a recent zoning by-law amendment. The plaintiff asserts that the amendment cannot

---

[1]The town of Wakefield.

lawfully be applied to his lots, because they were protected by the three-year zoning "freeze" of G. L. c. 40A, § 6, sixth par.[2] On the undisputed facts, we affirm.

On September 10, 1996, Joseph and Mary Nigro, the plaintiff's predecessors in title, submitted a plan to the planning board for endorsement, pursuant to G. L. c. 41, § 81P, that "approval under the subdivision control law [was] not required" (ANR plan). The planning board properly endorsed the plan (which created four lots, numbered 1-4, out of a single parcel, all of which lots had frontage on a public way, see G. L. c. 41, § 81L) on September 30, 1996. (See Appendix.) At the time of the endorsement, a house stood on what became lot 2. The other three lots were undeveloped.

On November 12, 1996, a zoning by-law amendment, referred to as the "front-to-back" amendment (now codified as § 190-35 of the town zoning by-laws), was adopted by town meeting. It provided, in pertinent part, that "[n]o lot on which any building is located shall be divided or subdivided in such a way that the original front yard of such existing building shall face the rear yard . . . of any proposed lot or lots."

The Nigros subsequently applied for and were issued a building permit to construct a house on lot 1. On August 17, 1997, however, the board denied their request for a variance from the front-to-back amendment which would have allowed the Nigros to build houses on lots 3 and 4. The Nigros sold lots 3 and 4 to the plaintiff in 1998.

On April 26, 1999, well within three years of the submission of the ANR plan, the plaintiff filed applications for building permits to construct houses on lots 3 and 4, asserting that such uses were protected by the three-year zoning "freeze" of G. L. c. 40A, § 6, sixth par. The building inspector denied the applications as contrary to the front-to-back amendment. On June

[2]This statute pertinently provides: "When a plan referred to in [G. L. c. 41, § 81P] . . . has been submitted to a planning board [and proper written notice has been given to the town] *the use of the land shown on such plan* shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan while such plan is being processed under the subdivision control law . . . and for a period of three years from the date of [the plan] endorsement . . ." (emphasis added). G. L. c. 40A, § 6, sixth par., as amended through St. 1986, c. 557, § 54.

29, 1999, following a hearing on the plaintiff's appeal, the board upheld the building inspector's denials. It concluded that the front-to-back amendment was a dimensional and not a use regulation and was therefore applicable to the land shown on the ANR plan even within the three-year freeze period.[3]

On the plaintiff's appeal pursuant to G. L. c. 40A, § 17, a judge of the Land Court affirmed the board's decision. The judge agreed that the front-to-back amendment was a dimensional regulation, the application of which to the locus did not result in a de facto use regulation violative of the statutory zoning freeze. Her conclusion rested on the premise that the impact of the amendment was to be gauged with respect to the subdivided parcel as a whole and not the individual lots. Such an analysis revealed that application of the amendment did not unreasonably impair the plaintiff's right to develop his land or negate the protection afforded by G. L. c. 40A, § 6, sixth par. The judge buttressed her holding by reference to the language of the statute, its legislative history, and Supreme Judicial Court precedent.

Having carefully considered the record and the parties' briefs, we conclude there is no basis to disturb the Land Court judge's thoughtful decision, the reasoning of which, summarized below, we adopt.

"The statutory zoning freeze provides landowners with protection from amendments to zoning laws that would unpredictably and unfairly burden the development of their land." *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. 71, 76 (1997). On its face, the front-to-back amendment is a dimensional regulation and not a regulation of the "use of the land," so that it is prima facie applicable to lots 3 and 4 notwithstanding the statutory freeze.

The plaintiff argues, however, that the amendment is a de facto use regulation. A dimensional regulation amounts to a de facto use regulation if its impact as a practical matter eliminates or virtually nullifies a protected use (here residential

---

[3]The parties, who agree that the amendment was a dimensional requirement, stipulated that, but for the front-to-back amendment, lots 3 and 4 would have been suitable for residential use and that the board's application of the amendment rendered the lots unbuildable for that purpose.

development). See *Bellows Farms, Inc.* v. *Building Inspector of Acton,* 364 Mass. 253, 260-261 (1973); *Cape Ann Land Dev. Corp.* v. *Gloucester,* 371 Mass. 19, 22, 24 (1976), *S.C.,* 374 Mass. 825 (1978).

The scope of this principle is, however, narrow, as demonstrated by the *Bellows Farms* case. There, the plaintiffs submitted an ANR plan at a time when applicable zoning laws allowed them to construct a maximum of 435 residential apartments. Soon thereafter, the town passed dimensional zoning amendments relating to off-street parking, intensity of use standards, and site plan approvals. The amendments effectively reduced the number of buildable apartments to 203. *Bellows Farms, Inc.* v. *Building Inspector of Acton,* 364 Mass. at 260. Despite the amendments' effecting a substantial reduction in the number of buildable units, the court concluded that the zoning amendments were not de facto use regulations, because they "did not constitute or otherwise amount to a total or virtual prohibition of the use of the locus for apartment units," a significant number of which could still be constructed. *Ibid.*[4] That a dimensional regulation results in a reduction in the scope or extent of a plan's protected use — even a great reduction, as in *Bellows Farms* — does not, therefore, warrant its characterization as a de facto use regulation undermining the protection of the G. L. c. 40A, § 6, sixth par., zoning freeze.[5]

The judge rejected the plaintiff's contention that the board's

---

[4]See *Cape Ann Land Dev. Corp.* v. *Gloucester,* 371 Mass. at 24 (holding that notwithstanding the zoning freeze, the city "may impose reasonable conditions [on the locus enjoying an ANR endorsement during the freeze period] which do not amount, individually or collectively, to a practical prohibition of the [previously allowed shopping center] use"); *Perry* v. *Building Inspector of Nantucket,* 4 Mass. App. Ct. 467, 471 (1976) (citing *Bellows Farms, supra,* in support of its enforcement of dimensional and intensity regulations significantly limiting the number of buildable condominium units but not amounting to " 'a total or virtual prohibition of the use of the locus for' a purpose permitted at the time of submission of the [ANR] plan"). Cf. *Radcliffe College* v. *Cambridge,* 350 Mass. 613, 618-619 (1966) (zoning by-laws that required a college to use some of the land it owned to provide parking spaces in conjunction with the construction of a library did not unlawfully limit "the use of [the] land for . . . educational purpose[s]" under G. L. c. 40A, § 2).

[5]The plaintiff's reliance on *Samson* v. *San-Land Dev. Corp.,* 17 Mass. App. Ct. 977 (1984), and *Stampfl* v. *Zoning Bd. of Appeals of Norwood,* 33 Mass.

application of the front-to-back amendment revealed its true nature as a de facto use regulation because it imposed a "virtual or total prohibition" of the protected residential use of lots 3 and 4. The judge reasoned that the phrase "use of the land shown on [the] plan" in G. L. c. 40A, § 6, sixth par. (see note 2, *supra*), meant that the zoning freeze attached to the original undivided parcel of land as a whole, rather than providing use protection for the individual subdivided lots. Consequently, the amendment precluded residential development on only half, not all, of that parcel. While acknowledging that the issue of the meaning of the words "use of the land" in § 6, sixth par., had not been expressly addressed in any appellate decision, the judge appropriately looked for support for her construction to the Supreme Judicial Court's interpretation of essentially identical language used in G. L. c. 40A, § 6, fifth par.

In *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640-641 (2000), the court held that the eight-year zoning freeze for definitive subdivision plans under G. L. c. 40A, § 6, fifth par.,[6] applies to the entirety of the land subject to the approved plan, not to the particular lots shown thereon, even if the original subdivision is significantly altered after its approval.

App. Ct. 354 (1992), in support of his position that the Wakefield front-to-back amendment should be held to be a de facto use regulation, is misplaced. In both *Samson* and *Stampfl*, this court found that the amendments in question in fact resulted in strict use regulation, and the land affected was therefore protected during the statutory three-year freeze period. See *Samson* v. *San-Land Dev. Corp.*, *supra* at 979 (holding that the amendment was inapplicable to the plaintiff's land during the freeze period because it effectively rezoned the land to prohibit multifamily housing completely); *Stampfl* v. *Zoning Bd. of Appeals of Norwood*, *supra* at 356-357 (holding that the amendment was a use regulation which was in effect a condition on the use of property in the affected zone).

[6]General Laws, c. 40A, § 6, fifth par., as amended through St. 1985, c. 494, states, in pertinent part: "If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law, and written notice of such submission has been given to the city or town clerk before the effective date of ordinance or by-law, *the land shown on such plan* shall be governed by the applicable provisions of the zoning ordinance or by-law, if any, in effect at the time of the first such submission while such plan or plans are being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally approved, for eight years from the date of the endorsement of such approval . . ." (emphasis added).

The court declared that the statutory language, the "land shown on such plan," was "clear and unambiguous" in that respect. *Id.* at 640.

The Land Court judge correctly saw the holding in *Massachusetts Broken Stone Co.* as supporting the same conclusion here. The use of the phrase "the land shown on such plan" in G. L. c. 40A, § 6, sixth par., must be deemed to reflect a similar intention that the use freeze be applicable to the parcel of land shown on the ANR plan in its entirety, rather than providing protection for the individual subdivided lots. See *Plymouth County Nuclear Information Comm., Inc.* v. *Energy Facilities Siting Council,* 374 Mass. 236, 240 (1978); *Beeler* v. *Downey,* 387 Mass. 609, 617 (1982); *Green* v. *Board of Appeals of Provincetown,* 404 Mass. 571, 573 (1989); *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund,* 423 Mass. 165, 168 (1996) (all holding that the same words used in different sections of a statute, including G. L. c. 40A, should be given the same meaning).

The judge's construction was reinforced by her examination of the legislative history of G. L. c. 40A, § 6, sixth par., as discussed in *Bellows Farms.* There, the court noted that G. L. c. 40A, § 7A (the statutory predecessor to G. L. c. 40A, § 6, sixth par.), had provided that "[n]o amendment to any zoning ordinance or by-law shall apply to or affect *any lot* shown on [an ANR plan]" (emphasis added). *Bellows Farms, Inc.* v. *Building Inspector of Acton,* 364 Mass. at 258. Specifically addressing the linguistic change from "any lot" in the version of § 7A enacted in 1960 to the "use of the land" in a later amendment to § 7A, the court discerned a legislative intent in amending § 7A to narrow the freeze protection afforded landowners against subsequent zoning amendments:

> "The use of the different language in the current statute indicates a legislative intent to grant a more limited survival of pre-amendment rights under amended zoning ordinances and by-laws. We cannot ignore the fact that although the earlier statute protected without restriction 'any lot' shown on a plan from being affected by a zoning amendment, the later statute purports to protect only 'the use of the land' shown on a plan from the effect of such

an amendment. None of the words of the present statute should be treated as superfluous."

*Ibid.*

The judge accurately noted that the board's application of the front-to-back amendment, while preventing the plaintiff's desired construction on lots 3 and 4, did not impermissibly curtail the reasonable "use" of the plaintiff's predecessor's original parcel of "land" for the freeze-protected purpose of home construction. Far from imposing a "total or virtual prohibition" on such a use, the amendment left the plaintiff's predecessor with a parcel, half of which could be residentially developed.[7] Compare *Bellows Farms, Inc.* v. *Building Inspector of Acton*, 364 Mass. at 254-255, 261 (postplan dimensional zoning amendment, leaving the plaintiffs with the ability to develop fewer than half the desired apartment units, was nonetheless applicable to the locus).

In short, we agree entirely with the Land Court judge's determination that the Wakefield front-to-back amendment was a dimensional regulation, the application of which to the plaintiff's lots 3 and 4 did not impermissibly deprive him of the protection to which he was entitled under G. L. c. 40A, § 6, sixth par.

*Judgment affirmed.*

---

[7]As noted earlier, one of the four lots (lot 2) already had a house on it, while another (lot 1) had received an uncontested building permit.