RADCLIFFE COLLEGE *vs.* CITY OF CAMBRIDGE.

Middlesex.   February 9, 1966. — April 20, 1966.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Zoning,* Validity, Educational institution, Parking.   *Equity Pleading and
Practice,* Declaratory proceeding.

A zoning ordinance requiring a college which was a public educational
institution to provide a reasonable amount of space on its land for park-
ing of automobiles of its students, instructors, and employees dealt with
a secondary function of the college incidental to its main educational
function and did not limit "the use of [its] land for . . . [its public]
educational purpose" within G. L. c. 40A, § 2.   [618]

Where it appeared in a declaratory proceeding that the number of auto-
mobile parking spaces required by a zoning ordinance to be provided by
a college on its land in connection with a new library about to be built
thereon was not unreasonable for the land as a whole as then used for
dormitories and other purposes, but it did not appear that a further
application of the ordinance to contemplated additional new buildings
would not require an unreasonable number of parking spaces on the
land, the decree should be limited to declaring the parking space re-
quirement of the ordinance valid as applied to the library in the then
existing circumstances.   [618–619]

PETITION filed in the Land Court on December 1, 1964.

The case was heard by *McPartlin, J.*

*Andrew T. Trodden,* City Solicitor, for the respondent.

*Philip M. Cronin (Robert I. Hunneman* with him) for the
petitioner.

WHITTEMORE, J.   This is a petition in the Land Court
pursuant to G. L. c. 185, § 1 (j½), and c. 240, § 14A, in-

serted, respectively, by § 1 and § 2 of St. 1934, c. 263. It describes land in Cambridge on a part of which the petitioner is building a library and seeks (1) a declaration that art. VII, § 2, of the Cambridge zoning ordinance, requiring provision for off street parking of automobiles, is inapplicable to the petitioner's land; and (2) an order that the superintendent of buildings of the city shall not withhold, in reliance on art. VII, § 2, a building permit or certificate of occupancy for the proposed library.

The petitioner is a public educational institution incorporated by St. 1894, c. 166. *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.* 335 Mass. 486, 489. It is the owner of a quadrangular parcel of land (containing according to an exhibit, about 478,797 square feet[1]) bounded on the north by Linnaean Street, on the east by Walker Street, on the south by Shepard Street, and on the west by Garden Street. The library is in a rectangular area of over 80,000 square feet on the southwest corner at Garden and Shepard streets in a residence C–2 zone. The zoning ordinance, art. VII, § 2, requires for off street parking a one car space for each 1,000 feet of gross floor area. Relying thereon, the city superintendent of buildings refused to issue a building permit for the library until the college provided off street parking spaces for ninety cars. The college under protest submitted a plan showing ninety spaces within the quadrangle. If not required to comply with art. VII, § 2, it intends to provide thirty-six parking spaces for library employees. At present there are twelve parking spaces in the quadrangle.

The college claims to be exempt from art. VII, § 2, by reason of G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1, which provides "that no ordinance or by-law which prohibits or limits the use of land for any church or other religious purpose or for any educational purpose which is religious, sectarian, denominational or public shall be valid . . . ."

---

[1] The separate lot figures on another exhibit total 487,698 square feet.

The judge ruled that the college is a tax exempt public educational institution; that all its land in Cambridge is used for public educational purposes within the meaning of G. L. c. 40A; and that the library will be used for such purposes. He concluded by ruling that art. VII, § 2, of the ordinance limits the use of the land of the college for a public educational purpose, and is invalid as it applies to the college's land. A final decree was entered embodying the rulings in this last sentence. The city appealed. The evidence is not reported, but the judge's decision contains comprehensive findings of fact.

The judge granted the petitioner's fourth request reading: "The provisions of the Cambridge Zoning Ordinance, Article VII, Section 2 requiring designated amount of parking spaces per square foot of gross floor area, are inapplicable to . . . [the petitioner's] property under General Laws, C. 40A, sec. 2." The respondent's request for a ruling to the contrary was denied. The college's request that it is "exempt from the provisions of the Cambridge Zoning Ordinance" under G. L. c. 40A, § 2, was denied. The judge granted the city's request, in substance to the contrary, which read: "The issue of total exemption of the petitioner from the provisions of the Cambridge Zoning Ordinance under General Laws, c. 40A, sec. 2, is not raised by the pleadings and the evidence and no ruling upon that issue is required."

The college argues that it is "exempt" from the ordinance (apparently all provisions) because of G. L. c. 40A, § 2. The rulings upon the requests show that the judge did not intend so to rule. The actual issue in the pleadings is whether art. VII, § 2, applies to the library site, but the wording of the decree, supported by findings, reaches at least the entire quadrangle. The only present controversy is as to the library site, but there is in G. L. c. 240, § 14A, no requirement that a controversy be shown. *Woods* v. *Newton,* 349 Mass. 373, 376.

Parking spaces required by art. VII, § 2, may, by art. VII, § 3, cl. 1, b, be "on lots not more than two thousand feet

away from the building to be served," and, by art. VII, § 3, cl. 4, they "may be enclosed in a structure or be open." By art. VII, § 2, c,[2] dormitory parking spaces may be deducted from the number required for the library. There was testimony that "the college authorities were consulted in the development of the ordinance."[3]

The buildings in the quadrangle, totaling eleven in 1955, are all used for dormitories except for a small building used as an art studio. There were 1170 undergraduates in the college in 1964–1965 of whom 899 lived in the dormitories in the quadrangle. It was expected that 873 undergraduates would live in the dormitories in the year 1965–1966. Some of the dormitories contain dining and reception halls. Recently several buildings were removed to make space for the library. An open area in the center of the quadrangle is used by undergraduates as an athletic field. The college plans to erect in the quadrangle five new dormitories to house 350 undergraduates. "This development is contingent upon the effect of the Cambridge Zoning Ordinance in regard to providing parking spaces, and if spaces must be provided, the development will be adversely affected . . . . [C]ompliance with . . . the Zoning Ordinance would cause the college to use in addition to the space needed for the future development of the college, many of those parts of the quadrangle area which are now landscaped by lawns, bushes, shrubs and trees, and are used for recreation . . . . These landscaped features contribute to the attractiveness of the area, and if eliminated would detract from the appearance of the quadrangle. The parking problems [in the streets] around the quadrangle area are

---

[2] "Where an institution provides dormitory residence accommodations, the number of parking spaces provided as a result thereof may be deducted from the requirements established to satisfy the needs of classrooms, libraries, lecture halls, laboratories, or similar educational areas normally used by such residential students."

[3] There was also testimony that "they were represented on the advisory committee which worked on the preparation of the ordinance, and that the ordinance shows an endeavor to correlate the problems of the different educational uses and needs of the colleges with the normal residential, commercial, and industrial community uses and needs which prevail in the City."

caused partly by the residents in the area, and partly by the employees and undergraduates of the college." Students are required to register their automobiles at the college. In 1964–1965 there were fifty-three cars so registered.

Adequate provision for parking or housing the automobiles of persons using dwellings and other buildings has become of general public concern. Public convenience and safety are adversely affected by crowded streets. Available street spaces are limited and unable to accommodate the increasing number of automobiles. Street parking regulations are ineffective. These, as general phenomena, are matters of common knowledge; the findings show that they exist in the area about the college quadrangle.[4] The reasonable premise of a requirement for off street parking spaces for new buildings is that parking automobiles near by is an established function of the use of any building wherein people live, work, study or congregate for other purposes. Such a requirement is analogous to the statutory requirements of public corridors and exits of certain size and number and somewhat analogous to requirements of fire walls, fire escapes and fireproof construction.

The issue presented is whether the broad language of G. L. c. 40A, § 2, has barred the imposition in a zoning ordinance of any such requirement however appropriate and desirable. The statute has not been construed in this aspect. In *Attorney Gen.* v. *Dover,* 327 Mass. 601, we held that a by-law adopted in 1946 which, in effect, prohibited

---

[4] "The traffic problem of the City of Cambridge is one of its major municipal problems. One of the important purposes of the Zoning Ordinance was to supply the best solutions possible for the control of this problem. . . . The traffic problems which predominate are caused by congestion as a result of on street parking, and bring secondary complications in the difficulty of keeping the streets clean and of keeping them properly plowed of snow. . . . Shepard Street is considered one of the most difficult streets to control for parking because of the intense residential development which already exists around it, much of which predates the use of the automobile. There are special traffic regulations in winter time that apply to both Garden Street and Shepard Street. Under the present conditions it is difficult for fire trucks to get into Shepard Street. It is planned to limit future parking to one side of Shepard Street. Walker Street is another narrow street with the same problems as Shepard Street. Garden Street and Linnaean Street which are greater in width do not create as intense a problem as that of the other two streets."

the use of land for sectarian educational purposes was invalid under the statute (G. L. c. 40, § 25, inserted by St. 1933, c. 269, § 1, as amended by St. 1950, c. 325, § 1) which, with amendments, is now G. L. c. 40A, § 2. We said (p. 604) that "[t]here can be no doubt that the statute was intended as an expression of a general policy to take away from all municipalities all power to limit the use of land for . . . [the specified] purpose." In *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, 492–494, 495, we struck down dimensional requirements of a zoning by-law that affected the use of the land, pointing out that imposing the dimensional requirements for a single family house upon a proposed multipurpose college building of Holy Cross would virtually nullify the use exemption. The point was reserved (fn. p. 495) whether dimensional requirements not affecting the use of the land would validly apply to a religious or educational institution.

Providing for the parking or housing of the automobiles of students, instructors, and employees of an educational institution is within the broad scope of the educational powers of the institution just as is providing for the feeding and housing of such personnel. These are secondary functions incidental to the main educational purpose. Hence, a regulation that requires that some of the college land be used for parking does not lessen the availability of all or any of the institution's land for some appropriate educational purpose. We think the statute does not bar such regulation. Plainly the statute does not do so in express terms. At most the Cambridge ordinance requires choices among the proper educational purposes of the institution. In so doing it does not impede the reasonable use of the college's land for its educational purposes. We rule, therefore, that it does not limit "the use of [its] land for any . . . educational purpose" within the meaning of G. L. c. 40A, § 2.

The city's brief recognizes the possibility that the ordinance may call for more parking spaces than will be needed to accommodate cars that will be brought to the neighbor-

hood by the new library. A variance would not, as the city suggests, be available to overcome such a hardship. *Russell* v. *Zoning Bd. of Appeals of Brookline,* 349 Mass. 532, 535. But we discern no basis for concluding that the ordinance, as applied to the library, is so arbitrary as to be invalid. The findings show that there will not now be an unreasonable number of parking spaces for the quadrangle as it is now used.[5] It is not clear, however, that in its further application to five new dormitories the ordinance would not require a greater number of spaces than could in reason be deemed necessary to take care of the cars brought to the quadrangle by the use made of it by the college. In these circumstances we think the decree should be of limited scope. Before a controversy arises as to additional parking spaces, amendment of the ordinance (by provision for exceptions under G. L. c. 40A, § 4, or by other amendment) or some other change in circumstances may avoid it.

The decree is reversed. A decree is to enter declaring that, applied to the library in the quadrangle as now used, the ordinance is valid.

*So ordered.*

---

[5] The ordinance (art. VII, § 1, cl. 2) provides that "[b]uildings and land uses in existence on the effective date of this ordinance are not subject to these parking requirements . . .."