SISTERS OF THE
HOLY CROSS, INC., Plaintiff

vs.

TOWN OF BROOKLINE, Defendant

No. 105589

Land Court Division, Norfolk, ss.
Trial Court of the
Commonwealth of Massachusetts

May 21, 1982

**F. Anthony Mooney,** counsel for plaintiff.
**Cathleen Cauvell,** counsel for defendant.
**David Lee Turner,** counsel for defendant.

## DECISION

This is a complaint for a declaratory judgment pursuant to G.L. c. 185, sec. 1 (j 1/2) and c. 240, sec. 14A. The plaintiff, Sisters of the Holy Cross, Inc. (the "Sisters"), the record owner of land located in the Town of Brookline, in the County of Norfolk, seeks a binding declaration as to the validity, interpretation, and applicability to the proposed use of the land in question of the provisions set forth in Section 4.30, Use Category 10 of the Brookline Zoning By-law. The defendant, Town of Brookline (the "Town"), answered and subsequently, with the consent of the plaintiff, filed a motion to amend its answer in the respects set forth in the motion. Prior to the filing of the motion to amend, the plaintiff had filed a motion for judgment on the pleadings, or alternatively, for summary judgment, which the defendant has contested and as to which it has filed two affidavits. The

motion has been treated by the court as a motion for summary judgment pursuant to Mass. R. Civ. P. Rule 56. It was argued by counsel for both parties on May 11, 1982, and after consideration, the motion for summary judgment is hereby allowed. Since there is no dispute between the parties as to the facts, the sole question for determination is a pure question of law and it properly may be decided on such a motion. I hold that the provisions of. the Brookline Zoning Bylaw here in contention are invalid as inconsistent with the provisions of G.L. c. 40A sec. 3 as inserted by c. 808 of the Acts of 1975. The facts as they appear from the pleadings and affidavits are as follows:

1. The plaintiff is a non-profit corporation organized and existing under the laws of the State of Indiana with its principal office in the State of Indiana. The Sisters are duly registered as a foreign corporation in the Commonwealth pursuant to the provisions of G.L. c. 181, sec. 4.

2. The Sisters are the record owners in possession of a parcel of land (the "locus") situated on Holland Road and Fisher Avenue in the Town, conveyed to them by the Trustees of Boston University by deed dated June 26, 1979 and recorded with Norfolk Deeds, Book 5619, Page 556. The locus is comprised of parcels 3, 6 and 7 in said deed.

3. The locus previously was the site of a campus of an educational institution known as the Cardinal Cushing College, and located thereon were such facilities as dormitories, classroom facilities, cooking and dining facilities, administrative offices and accessory improvements on grounds covering about 4-1/2 acres.

4. The Article of Reorganization of the Sisters states that it is organized as a non-profit corporation for the purpose of performing educational, religious and charitable functions, including without limitation:

"To establish, maintain, operate and conduct schools, seminaries, academies and colleges throughout the United States, wherein students may obtain, on moderate terms, a sound classical, literary, mathematical, technical, primary, general and advanced education of the highest order; to teach obedience to and respect for the laws of God, the United States, and of the various states; to train, educate and equip persons to become educators; to provide for the delivery and holding of lectures, exhibits, public meetings, classes and conferences calculated directly and indirectly to advance the cause of education and refinement, whether general, professional or technical;

To lease or own, erect and maintain suitable grounds, buildings, structures and appurtenances for use in the furtherance of its objects; (and)

To confer such degrees as are usual in such institutions . . ."

5. The Sisters have entered into a purchase and sale agreement with another non-profit educational corporation covering the locus.

6. The locus is situated in an S-25 (Single Family) district pursuant to the Zoning By-law of the Town. The Town has amended Section 4.30, Use Category 10 of the By-law to provide that use of land for such educational purposes in a residential, business, or industrial district requires a special permit from the Board of Appeals. The complete text of the By-law is as follows:

"10. Religious, sectarian and non-sectarian, denominational, private or public school, not conducted as a private gainful business; provided (a) that no special permit shall be denied except for the following:
(1) where the proposed development does not comply with dimensional requirements specified in Article 5 as may be

modified under Section 5.08; or (2) where the proposed development does not comply with parking requirements specified in Article 6; or (3) where the nature of the operation departs from usual educational practice in terms of noise, hazard or other nuisance to such an extent as to be clearly incompatible with allowable uses in the area;

and provided further (b) that no application for a special permit shall be considered unless it conforms to a current master development plan for the entire school, including plans for major building changes and plans for off-street parking, outdoor recreation and athletics, which plan has been reviewed by the Planning Board for conformance with the goals and policies of the Brookline Comprehensive Plan and so reported to the Board of Appeals in accordance with Section 9.4. Said master development plan shall outline all proposed, planned and expected changes in (1) the real estate holdings of the institution; (2) the buildings and facilities of the institution; (3) the demands for public services to the institution; (4) the demands for public utilities to the institution; (5) the population of the institution by classification; and (6) the housing demands both on and off campus of the institution; all for the ten years following the submission of the plan."

7. Said Section 3 of Chapter 40A provides: "no zoning ordinance or by-law shall prohibit, regulate or restrict the use of land or structures for . . . educational purposes on land owned or leased by . . . a non-profit educational corporation . . ."

8. Prior to the 1978 amendment of the Zoning By-law religious, sectarian and non-sectarian, denominational, private or public schools not conducted as a private gainful business were permitted as of right in any zoning district. At that time a proposal was made that the By-law be amended to provide for greater control over institutional uses consistent with G.L. c. 40A. The Planning Board, as it is required to do, considered the proposed amendment to existing Use 10 and with the Planning Department, a Planning Consultant and the advice of town counsel revised the amendment to conform to what was understood to be statutory and case law limitations. Under date of April 6, 1978 the Planning Board issued its report which stated that "the proposal would make schools a 'Special Permit' use in all districts, subject to review and public hearing by the Board of Appeals. Also, additional language would be inserted to acknowledge the limitations of the town's power to regulate. Further, a requirement for the submission of a master development plan by the school would be required."

9. The proposed amendments to the zoning by-law initially contained a requirement that the master development plan be reviewed and approved by the Planning Board, but the article as adopted at the town meeting of May, 1978 eliminated the requirement of Planning Board approval and made provision only for a review by the Planning Board. The meeting, with 7 opposed, 5 abstaining and 180 in favor, voted to amend the By-law by inserting the provisions which now appear therein as to Use 10. Town counsel also suggested a further definition of the master development plan from the requirements originally proposed and these appear in the amendment as it appeared in the complaint.

10. An application for a special permit under section 9.4 of the Zoning By-law requires the submission of plans which meet the provisions of the State Building Code sections 113.0, 114.0 and 115.0 and conform to the Board of Appeals rule No. 5. The requirement for such plans are the same as those required for the issuance of a building permit.

The Town has first argued that the Sisters have the benefit of a non-conforming use which allows them to continue their present educational uses of the property, or to transfer locus to another non-profit educational institution which may do the same. Accordingly, the Town in effect argues that the Sisters do not have standing to question the By-law since they have not been adversely affected thereby. It is clear, however, that c. 240, sec. 14A requires no justiciable controversy to entitle a land owner to a declaration as to the effect of the provisions of a zoning ordinance or By-law on his land. **Radcliffe College v. Cambridge,** 350 Mass. 613 (1966). While a land owner may enjoy a certain satisfaction from the protection afforded by a recognition of a non-conforming use, the reports are replete with cases construing the extent of the protection afforded by pre-existing activity. Therefore, I find and rule that the Sisters are entitled to a decision as to the questions which they have raised despite the fact that they do not presently seek a building permit which would require compliance with the provisions adopted in 1978. See **Sturges v. Chilmark,** Mass. (1980)[1].

The sole issues presented for decision are whether the Town can consistently within the provisions of G.L. c. 40A, sec. 3 impose on a non-profit educational corporation a requirement that it file with the Board of Appeals a ten-year master development plan and file for, and obtain from the Board of Appeals a special permit to use its land for educational purposes.

Prior to St. 1975, c. 808, the General Court had provided in old c. 40A sec. 2 a seemingly unlimited proscription of any ordinance or bylaw which prohibited or limited the use of land for any educational purpose which is religious, sectarian, denominational or public. This was the result of a 1950 amendment designed as an answer to a provision in the zoning by-law of the Town of Dover which prohibited use of land in a residential district for sectarian educational purposes. **Attorney General v. Dover,** 327 Mass. 601 (1951). The Dover case was followed by two significant decisions of the Supreme Judicial Court, the first being **Sisters of the Holy Cross of Mass., Inc. v. Brookline**, 347 Mass. 486 (1964) where it was held that the town could not validly apply dimensional requirements for a residence in a single family residential district to buildings that serve educational or religious purposes and **Radcliffe College v. Cambridge,** supra, where the Court permitted the imposition of certain dimensional requirements which did not impede the reasonable uses of the educational institution's land for its purposes.

The comprehensive revision of the Zoning Enabling Act rewrote the provisions relative to educational institutions to authorize the imposition of certain reasonable dimensional requirements. Accordingly, in sec. 3, the present act sets forth the following limitation on the freedom from regulations otherwise granted: "provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements."

The position of the Town of Brookline is that the special permit mechanics which it adopted are merely a means to implement the reasonable regulations concerning denominational requirements authorized by the General Court. The argument is made that the preceding paragraph of Section 3 specifically proscribes the requirement of a special permit "for the use of land for the primary purpose of agricultural, horticultural or floricultural" whereas the paragraph with which we are concerned makes no reference to special permits. It is now too late, however, for the Town to make this argument since its position has

---

1. Mass. Adv. Sh. (1980) 815, 817-18.

already been foreclosed by two decisions of Appeals Court.[2] Most recently it was held in **Commissioner of Code Inspection of Worcester v. Worcester Dynamy, Inc.,** Mass. App. Ct. (1980)[3] that the Legislature did not intend to enable a city or town to impose special permit requirements on legitimate educational uses which have been authorized to exist as of right in any zone. In the case in question a dispute had arisen as to whether the educational facility could operate an off-campus dormitory in Worcester without obtaining a special permit from the Board of Appeals. It had been held in the Superior Court that the use of the premises was residential in nature and that locus therefore was subject to zoning use regulation, but this conclusion was rejected by the Appeals Court. The **Dynamy** decision had been preceded by a thorough examination of the history of old c. 40A, sec. 2 and new c. 40A, sec. 3 by Justice Greaney in **The Bible Speaks v. Board of Appeals of Lenox,** Mass. App. Ct. (1974)[4]. The case concerned a dispute between a corporation with religious educational facilities in Lenox and the town authorities as to whether the plaintiff should have been granted building permits for certain uses attendant to its playing field without the necessity of first applying to the Board of Appeals for a special permit. The Appeals Court weighed the question as to whether the Board of Appeals of Lenox properly might condition the grant of permission to change the use of three of the plaintiff's existing buildings into classroom and dormitory space either upon restrictions which affected the entire educational campus or upon restrictions concerning buildings without the special permit applications. The decision was that the special permit provisions were invalid. The Court held that the town "may not, through the guise of regulating bulk and dimensional requirements under the enabling statute, proceed to 'nullify' the use exemption permitted to an educational institution." (p. 1374). The Lenox By-law required each non-municipal educational institution planning any change in its building and structures to file with the Board a site plan and an informational statement. The Court concluded after a consideration of the provisions of the By-law that:

> "There is nothing in the language of G.L. c. 40A, sec. 3, which contemplates the requirement of site plans and informational statements as monitoring devices for educational uses . . ." (p. 1376).

The Town makes much of the fact that the Brookline Zoning Bylaw does not give the Planning Board any right to approve the **Dynamy** type development plan, but only to review it for conformity with the goals and policies of the Brookline Comprehensive Plan. It seems clear that this argument is sophistry since the By-law requires that the plan not only be reviewed for conformity, but be so reported to the Board of Appeals. The By-law is ambiguous in part in this respect, but it appears that before any application for a special permit can be considered "a master development plan for the entire school, including plans for major building changes and plans for off-street parking, outdoor recreation and athletics" must have been reviewed by the Planning Board "for conformance with the goals and policies of the Brookline Comprehensive Plan and so reported to the Board of Appeals." I assume in favor of the Town that such a master development plan need be filed only once,

---

2. We note that the Supreme Judicial Court has not as yet had occasion to consider this particular wording of Section 3, although in decisions which predate the 1975 amendment, there can be found cases upholding (but without specifically deciding the validity of) a requirement as to a special permit. See, for example, **Shuman v. Board of Aldermen of Newton,** 361 Mass. 758 (1972) and **Cumberland Farms of Connecticut v. Zoning Board of Appeals of North Attleborough,** 359 Mass. 68 (1971).

3. Mass. App. Ct. Adv. Sh. (1980) 2261, 2262.

4. Mass. App. Ct. Adv. Sh. (1979) 1362.

but the requirement clearly goes beyond any requirement contemplated by the General Court. Moreover, the development plan must outline all proposed, planned and expected changes in six named areas, many of which lie without the purview of the Planning Board and the Board of Appeals. The burden which this imposes on an educational institution may be severe, and since the legislature has given the institution the right without any veto by local authorities to use any property within the town, the purpose of the plan is suspect. In addition, subparagraph 3 of Section 4.30 Use 10 is clearly bad as a prior restraint upon the educational institution's right to use its property. The subparagraph reads as follows:

> "(3) Where the nature of the operation departs from usual educational practice in terms of noise, hazard or other nuisance to such an extent as to be clearly incompatible with allowable uses in the area;"

Granted that neither an educational institution nor any other entity has a right to create a nuisance, it is not for the Board of Appeals under the guise of regulating noise, hazard or nuisance to bar an educational practice before any nuisance occurs. While the dimensional requirements to which reference is made in subpragraph 1 and subparagraph 2 may be imposed to the extent that they are reasonable, they may not be the subject of a special permit. There is no reason why they should not remain where they customarily are found, i.e., in the process of applying for a building permit.

As the Supreme Judicial Court has repeatedly stated (see, for example, **Crall v. Leominster,** 362 Mass. 95 (1972) and **Sturges v. Chilmark,** supra, at page 825) the role of the courts in reviewing by-laws is limited, every presumption is made in their favor, and if their reasonableness is fairly debatable, they are sustained. The By-law in the present case does not pass this test. I, therefore, find and rule that the provisions of Section 4.30 Use 10 which require a non-profit educational corporation to obtain a special permit for educational purposes and to file a master development plan are invalid as a matter of law and may not be enforced. The locus may be devoted to use for educational purposes by a non-profit educational institution within the meaning of G.L. c. 40A sec. 3, as amended, without the necessity of first filing a master development plan or obtaining a special permit pursuant to the requirements of Section 4.30, Use 10 of the Town's Zoning By-law.

Judgment accordingly.

**Marilyn M. Sullivan, Justice**