TRUSTEES OF TUFTS COLLEGE *vs.* CITY OF MEDFORD.

Suffolk. March 2, 1993. - July 9, 1993.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Zoning,* Educational use, Parking, Validity, Variance. *Education,* Zoning.

Discussion of the legal principles involved in the interaction of local zoning
   ordinances with the Dover Amendment, G. L. c. 40A, § 3, second par.,
   as inserted by St. 1975, c. 808, § 3. [757-761]
In an action brought in the Land Court by a university under G. L. c. 240,
   § 14A, contesting the applicability of the local zoning ordinance to pro-
   posed construction projects on the university's campus, the university
   did not demonstrate that the ordinance parking requirements or loading
   space requirements were unreasonable as applied to the campus. [761-
   763] O'CONNOR, J., concurring.
In an action brought by a university contesting the applicability of the
   local zoning ordinance to proposed construction projects on the campus,
   the record did not provide a basis for the judge's conclusion that a set-
   back requirement was unreasonable as applied to the proposed parking
   garage. [763-764] O'CONNOR, J., concurring.
Language in a judgment of the Land Court purporting to declare that
   local ordinance requirements cannot apply to future unspecified con-
   struction projects on a university campus was to be deleted from the
   judgment as lacking a proper factual foundation for such a determina-
   tion. [764-766] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Land Court Department
on September 13, 1988.

The case was heard by *Robert V. Cauchon,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Eric W. Wodlinger (Robert J. Blumsack,* City Solicitor,
with him) for the defendant.

*Daniel J. Gleason (Donald R. Peck & Edward C. Mendler*
with him) for the plaintiffs.

*David R. Rodgers & Jeffrey Swope,* for The Association of Independent Colleges and Universities in Massachusetts, amicus curiae, submitted a brief.

*John A. Pike,* for The Abstract Club & another, amici curiae, submitted a brief.

GREANEY, J. This case concerns whether dimensional, parking and loading space requirements of the Medford zoning ordinance (ordinance) can be applied to several construction projects planned by Tufts College.[1] After a trial on a complaint brought in the Land Court by Tufts under G. L. c. 240, § 14A (1990 ed.), a judge of that court decided that the ordinance requirements could not, for the most part, be validly applied to Tufts' projects consistent with G. L. c. 40A, § 3, second par., as inserted by St. 1975, c. 808, § 3 (generally referred to as the Dover amendment).[2] Medford appealed. The Appeals Court, relying on Medford's interpretation of the ordinance requirements and concessions made by Medford, determined that the judgment should be modified to permit application to Tufts' projects of some of the provisions. 33 Mass. App. Ct. 580 (1992). We granted further appellate review. We agree with the Appeals Court that modification of the judgment is appropriate.

---

[1] Tufts' campus is partly located in the city of Somerville. Somerville was originally named as a defendant in Tufts' action, but Tufts and Somerville arrived at an agreement with regard to the construction that will occur in Somerville. The remaining matters affect the projects planned for the Medford portion of the campus.

[2] The pertinent provisions of G. L. c. 40A, § 3 (1990 ed.), read as follows: "No zoning ordinance or by-law . . . shall . . . regulate or restrict the use of land or structures for religious purposes or for educational purposes . . . by a nonprofit educational corporation; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements." The history of the special zoning status granted to educational and religious uses of land is recounted in *The Bible Speaks* v. *Board of Appeals of Lenox,* 8 Mass. App. Ct. 19, 27 n.10 (1979).

The projects as to which there remains controversy[3] are a 96,000 square foot addition to the Wessell Library (Wessell), Tufts' undergraduate library, and a multi-level parking garage which is planned on the site of an existing building on the southern side of Boston Avenue. The garage will provide parking spaces initially for 290 vehicles with an ability to be expanded to 530 spaces. Both projects will be located in the core, or Hill, area of Tufts' campus, on land zoned by Medford for "Apartment-2 Residential" use. Tufts also sought a determination that requirements of the ordinance could not be applied to future, as yet unspecified, projects in the core area of its campus.

The requirements of the ordinance that remain at issue provide for: (1) a front-yard setback dependent on the size of the building and calculated by a formula (§ 6.3.5 [c]); (2) one loading space (twelve feet in width and thirty feet in length) for each 50,000 square feet of new construction (§§ 5.3, 10.41 and 10.45);[4] and (3) one parking space for each 750 square feet of new construction which must be lo-

---

[3]Several matters that were the subject of controversy in the Land Court are no longer at issue. The ordinance contains a provision that requires site plan review in conjunction with an application for a special permit for projects having a significant impact on Medford. Relying on *The Bible Speaks* v. *Board of Appeals of Lenox, supra,* the Land Court judge concluded that the site plan review and special permit requirements of the ordinance could not be applied to Tufts' projects. Medford does not dispute this point.

Prior to trial, Medford granted Tufts a variance from the ordinance's parking and loading space requirements as to the construction of the Olin Language and Culture Center (Olin), a new classroom building. The Land Court decision nonetheless provided that the ordinance's parking and loading space requirements were inapplicable to Olin. Medford does not challenge this ruling.

Tufts also contested the application of dimensional and parking requirements to a proposed addition to its Cousens Gymnasium and Hamilton Pool facility. The judge concluded that the requirements could be applied to this project. Tufts no longer questions this conclusion.

[4]A loading space is a striped-in area of pavement, adjacent to a building, reserved for trucks and other vehicles making deliveries to the building. The purpose of loading spaces is to provide off-street access to a delivery site and thus alleviate traffic congestion that may result when vehicles, particularly trucks, block busy streets while trying to make deliveries.

cated either on the same lot as the new construction or within 200 feet thereof (§§ 5.3, 10.2 and 10.24). The ordinance defines the term "lot" as a duly recorded parcel of land which is commonly owned and has definite boundaries and is not divided by a street (§ 3.30).[5]

Application of these requirements to the Wessell addition would require Tufts to provide 130 new parking spaces on the Wessell lot (or within 200 feet thereof). Assuming that the ordinance could be construed as treating each building on the campus as occupying a separate lot, see note 5 *supra*, the Land Court judge interpreted the parking requirement as necessitating "postage stamp" parking lots adjoining each project Tufts might undertake in the core area of its campus. The judge considered this requirement to be incompatible with the character of the Tufts campus. In the judge's opinion, the proposed Boston Avenue garage provided a reasonable solution to the parking problem faced by Tufts, but it was not a solution permitted under the ordinance. The judge also concluded that Wessell did not need two additional loading spaces. He therefore ruled that provisions of the ordinance requiring off-street parking and loading spaces "did not rise to the level of 'reasonable regulations' within the meaning of G. L. c. 40A, § 3, and, accordingly, [were] inapplicable to Tufts' use of its land in Medford."

The ordinance also requires a fifty-foot setback from Boston Avenue for the new parking garage (§ 6.3.5 [c]). Tufts proposes a thirty-foot setback for the garage. "The evidence was to the effect that there is no absolute physical impediment to constructing a garage of the planned dimensions with a setback of fifty feet, but the cost will be increased because of the sharply rising slope of the land behind the

---

[5]The ordinance also provides (§ 6.24 [a]) that buildings on the same lot "shall not be less than the same distance from one another as if they were on separate lots." The Land Court judge found that application of this provision would necessitate drawing imaginary "lot lines" on Tufts' campus for purposes of calculating the required distance between buildings. Medford has conceded that this provision is unreasonable as applied to the construction of Olin, Wessell, and the Boston Avenue parking garage.

garage and because of the need that will be created to support the foundation of another building, a power plant, situated on the same hillside. No estimate of the expected cost increase was put in evidence . . . ." 33 Mass. App. Ct. at 585. The Land Court judge, who took a view of the campus, noted that the topography of the land at the proposed garage site might warrant the grant of a variance under G. L. c. 40A, § 10, from the setback requirement. Based on a need for a solution to a serious parking problem facing Tufts, and apparently assuming that the garage might not be built if the setback requirement was enforced, the judge concluded that full setback would unreasonably interfere with the use of Tufts' land. He declared, therefore, that the setback requirement could not be enforced. Finally, the judge extended his conclusion that the various requirements of the ordinance that were in contention could not be applied to any future construction that might be undertaken by Tufts in the core area of the campus, and, in a postjudgment order (entered on Tufts' request), the judge defined the area of Tufts that he considered to constitute the "core campus."

1. *The Dover Amendment.* We first discuss generally applicable legal principles. The Dover Amendment bars the adoption of a zoning ordinance or by-law that seeks to prohibit or restrict the *use* of land for educational purposes. However, a proviso to the statute authorizes a municipality to adopt and apply "reasonable regulations" concerning bulk, dimensions, open space and parking, to land and structures for which an educational use is proposed. The whole of the Dover Amendment, as it presently stands, seeks to strike a balance between preventing local discrimination against an educational use, see *Newbury Junior College* v. *Brookline,* 19 Mass. App. Ct. 197, 205 (1985), and honoring legitimate municipal concerns that typically find expression in local zoning laws. This case requires us to address that balance in practical terms.

Local zoning requirements adopted under the proviso to the Dover Amendment which serve legitimate municipal purposes sought to be achieved by local zoning, such as promot-

ing public health or safety, preserving the character of an adjacent neighborhood, or one of the other purposes sought to be achieved by local zoning as enunciated in St. 1975, c. 808, § 2A, see *MacNeil* v. *Avon*, 386 Mass. 339, 341 (1982), may be permissibly enforced, consistent with the Dover Amendment, against an educational use. See *Radcliffe College* v. *Cambridge*, 350 Mass. 613 (1966); *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 31 (1979) (a building inspector may properly deny permits to an educational institution for a structure that does not comply with "reasonable regulations"). See also *Southern New England Conference Ass'n of Seventh-Day Adventists* v. *Burlington*, 21 Mass. App. Ct. 701, 710 (1986) (local zoning law protecting wetlands applied to property protected by Dover Amendment). The *Radcliffe College* case suggests that a local zoning provision that requires an educational institution to adapt plans for the use of its land may be enforced, so long as the provision is shown to be related to a legitimate municipal concern, and its application bears a rational relationship to the perceived concern. On the other hand, a zoning requirement that results in something less than nullification of a proposed educational use may be unreasonable within the meaning of the Dover Amendment. See *Radcliffe College* v. *Cambridge*, *supra* at 619 (concluding that a parking requirement could be applied, but suggesting that future application might be unreasonable if the result would require the educational institution to provide more parking spaces "than could in reason be deemed necessary to take care of the cars brought to the [area] by the use made of it by the college").[6]

---

[6]The legislative history supports the conclusion that G. L. c. 40A, § 3, second par., is intended to incorporate the principles enunciated in *Sisters of the Holy Cross* v. *Brookline*, 347 Mass. 486 (1964), and in *Radcliffe College* v. *Cambridge*, 350 Mass. 613 (1966). In the Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act (Jan. 1972) (Report), which preceded enactment of the present Zoning Act, the statutory protection accorded educational uses was considered. See Report, 1972 House Doc. No. 5009. As to the then existing law, it was said (at p. 21) that "the scope of the

What we have said thus far suggests that the question of the reasonableness of a local zoning requirement, as applied to a proposed educational use, will depend on the particular facts of each case. Because local zoning laws are intended to be uniformly applied, an educational institution making challenges similar to those made by Tufts will bear the burden of proving that the local requirements are unreasonable as applied to its proposed project. The educational institution might do so by demonstrating that compliance would substantially diminish or detract from the usefulness of a proposed structure, or impair the character of the institution's campus, without appreciably advancing the municipality's legitimate concerns.[7] Excessive cost of compliance with a requirement imposed on an educational institution, without sig-

---

[educational use protection], as presently worded, would seem to depend on whether or not the application of bulk regulations to the institution within the ambit of its protection has the effect of defacto prohibition on use as opposed to a channeling effect where alternative educational . . . uses are available." With regard to proposed § 3, the Report (at p. 26) "encourag[ed] the use of [reasonable bulk, dimensional and parking] control[s] where essential to the well-being of the adjacent neighborhood, and where the regulation will not seriously jeopardize the mission of the protected institutions."

In maintaining that facially neutral zoning requirements automatically can be applied to an educational use, the dissent, *post*, fails to take into account this legislative history, and the cases cited above, which St. 1975, c. 808, § 3, was intended to codify. See *Newbury Junior College* v. *Brookline*, 19 Mass. App. Ct. 197, 199 n.4 (1985); *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 29 (1979) (St. 1975, c. 808, c. 3, synthesizes Dover amendment and case law construing it). The *Radcliffe College* and *Sisters of the Holy Cross* cases plainly provide that facially neutral requirements cannot be applied to educational uses without further inquiry into the outcome produced by such an application. Particularly where the requirements sought to be applied do not take into account the special characteristics of an educational use (such as on-campus living and dining arrangements and the need for large classroom and library buildings), as is the case here, application of the requirements to the property of an educational institution may be inappropriately restrictive. If the approach suggested by the dissent is followed, a set of facially neutral zoning requirements could be adopted that would, in practice, prevent almost any educational use of land.

[7]For example, a showing that the parking requirements of the ordinance, as applied, would necessitate that Tufts pave over significant open areas of the campus, would demonstrate the unreasonableness of the ordinance in

nificant gain in terms of municipal concerns, might also qualify as unreasonable regulation of an educational use. We reject the suggestion that only local zoning requirements drafted specifically for application to educational uses are reasonable within the scope of the Dover Amendment. Nothing in that statute mandates the adoption of local zoning laws which are tailored specifically to educational uses. See Report, *supra* at 26 (observing that *ideally* regulations should be specifically adapted to educational uses). Similarly, proof that a local zoning law could accomplish its purpose if it were drafted in terms other than those chosen will not suffice to establish that the municipality's choice of regulation is unreasonable.[8] See *Moss* v. *Winchester*, 365 Mass. 297, 299 (1974).

The Appeals Court observed in this case that the Dover Amendment is intended to encourage "a degree of accommodation between the protected use . . . and matters of critical municipal concern . . . ." (citations omitted). 33 Mass. App. Ct. at 584. We agree with this observation, but add that such an accommodation cannot be achieved by insisting that an educational institution seek a variance to obtain permission to complete its project.[9] *Radcliffe College* v. *Cambridge*, *supra* at 619, citing *Russell* v. *Zoning Bd. of Appeals of Brookline*, 349 Mass. 532, 535 (1965). Additionally, a court may consider a municipality's proper concession, such as was made here in the course of litigation, that a particular re-

---

view of the fact that construction of the proposed garage will provide an adequate solution to the parking problem.

[8]For example, the fact that the Medford ordinance might alleviate the parking problem on and around the Tufts campus by means of a regulation based on the size of the student population does not prove that requiring additional parking in association with new construction is an unreasonable means of addressing an existing parking deficiency.

[9]However, if a variance is granted at the request of an educational institution, and not challenged by an aggrieved party within the time period permitted by statute, the variance cannot thereafter be attacked as improper. See *O'Blenes* v. *Zoning Bd. of Appeals of Lynn*, 397 Mass. 555 (1986); *Bjornlund* v. *Zoning Bd. of Appeals of Marshfield*, 353 Mass. 757 (1967).

quirement of its zoning law is unreasonable as applied to a proposed educational use. Apart from any concession, the remaining requirements of the local zoning law, if otherwise reasonable, would still apply. *Doliner* v. *Town Clerk of Millis*, 343 Mass. 10, 15 (1961) (zoning by-law provisions treated as separable). *Attorney Gen.* v. *Dover*, 327 Mass. 601, 608 (1951). We now consider application of the ordinance's requirements to Tufts' projects in light of these principles and the Appeals Court's modification of the Land Court judgment.

2. *Wessell addition.* a. *Parking.* The Appeals Court modified the judgment by deleting therefrom language that declared the ordinance's parking requirements inapplicable to the Wessell addition. As the basis for so doing, the Appeals Court agreed with Medford's contention that the ordinance's definition of the term "lot," see note 5 *supra*, could be construed as treating discrete areas of Tufts' core campus, bounded by streets, as single commonly owned lots. Under this interpretation, the proposed Boston Avenue garage and Wessell would occupy the same lot. The parking that will be provided by the garage (a minimum of 290 spaces) more than satisfies the ordinance's requirement that Tufts, in conjunction with the Wessell addition, provide a minimum of 130 new parking spaces on the lot containing Wessell.

A court should construe a local zoning requirement "in a manner which sustains its validity," *Doliner* v. *Town Clerk of Millis*, *supra* at 15, if this can be done without straining the common meaning of the terms employed. *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 290 (1981). *Hall* v. *Zoning Bd. of Appeals of Edgartown*, 28 Mass. App. Ct. 249, 254 (1990). The ordinance's definition of lot logically applies to the part of the Tufts campus in which Wessell is situated and the parking garage will be located.[10]

---

[10]Tufts suggests that another provision of the ordinance, (§ 7.51) which limits structures that may be built in a rear yard, prohibits more than one major structure on a single lot, and therefore forecloses application of the ordinance's definition of "lot" to areas of Tufts' campus already containing

Based on this interpretation, Tufts has not shown that the parking requirements of the ordinance are unreasonable as applied to the Wessell addition. It was properly found in the Land Court that there is a serious parking problem on Tufts' core campus and on public streets adjacent thereto. Parking, as it affects physical conditions on and around an educational use, is a legitimate municipal concern and a proper subject of local zoning regulation. *Radcliffe College* v. *Cambridge,* *supra* at 617 & n.4. Compliance by Tufts with the parking requirements of the ordinance "would not require a greater number of spaces than could in reason be deemed necessary to take care of the cars brought to the [area] by the use made of it by the college." *Id.* at 619. While Tufts might prefer to defer addressing the parking problem, the ordinance's requirements can be satisfied by the construction of the parking garage, a use of Tufts' land recommended to the college by its consultants and found to be reasonable by the Land Court judge. We therefore agree with the Appeals Court that the requirements concerning parking are reasonable as applied to Tufts' campus, and that Medford can require Tufts to construct the Boston Avenue parking garage (or some equivalent which satisfies the ordinance's requirements) as a condition to building the Wessell addition.

b. *Loading spaces.* The Land Court judge concluded that deliveries to Wessell would not be sufficient in number to justify the two additional loading spaces required by the ordinance. He determined, therefore, that the loading space requirements of the ordinance could not reasonably be applied to the Wessell addition. The Appeals Court revised this por-

---

numerous major structures. As a matter of construction, we are not persuaded by Tufts' position. The provision in question must be read in conjunction with § 6.24 (a), see note 5 *supra,* which *permits* multiple structures on a single lot. We think that § 7.51 only limits structures that can be built within the rear yard setback requirement imposed by the ordinance. More to the point, the record contains no evidence that Medford has invoked § 7.51 as a basis for blocking construction of the addition to Wessell or the parking garage. Thus, we do not have occasion to construe this provision, or to consider its reasonableness, as applied to Tufts' projects. See *Doliner* v. *Town Clerk of Millis, supra* at 10, 14-15.

tion of the judgment because of "the ease with which compliance [with the loading space requirements can be] achieved." 33 Mass. App. Ct. at 586. Tufts contends that the notion of "ease of compliance" is foreign to Dover Amendment jurisprudence. We disagree.

On this aspect of the appeal, the Appeals Court simply expressed, in different terms, the principle that the burden of proving a local zoning requirement unreasonable under the Dover Amendment falls on the educational institution challenging the requirement. When compliance will involve no significant cost or other hardship to an educational institution, and does not interfere to any appreciable extent with the institution's plans, the institution has failed to make out a case that the requirement, as applied, is unreasonable.[11]

3. *Parking garage.* The Appeals Court also deleted the portion of the judgment that declared the ordinance's setback requirement inapplicable to construction of the Boston Avenue garage. As noted, the evidence was that the parking garage could be constructed with the fifty-foot setback required by the ordinance, but that compliance with the ordinance would increase the cost of the project. No estimate of the amount of the increase was put in evidence by Tufts. Medford, on the other hand, demonstrated that Boston Avenue, a major public way, has only one traffic lane in each direction and is heavily travelled, particularly at rush hours. The fifty-foot setback will permit vehicles easier access to the garage, reducing congestion and enhancing safety. With no particularized evidence in this case as to the cost and difficulty of compliance that can be measured against Medford's legitimate concerns as to traffic congestion and safety, the Land

---

[11]*Tisbury* v. *Martha's Vineyard Comm'n*, 27 Mass. App. Ct. 1204 (1989), relied on by Tufts, is not to the contrary. In *Tisbury*, the evidence established that requiring compliance with by-law provisions governing the size of oil tanks would, in practice, prohibit the landowners from using their property for agricultural purposes (also protected by G. L. c. 40A, § 3). In other words, application of the by-law provisions would nullify a protected use. This is clearly distinguishable from a situation in which compliance does not encroach to any appreciable extent on an educational institution's right to set its own priorities for the use of its land.

Court judge lacked an appropriate basis for the conclusion that Tufts had proved the setback requirement unreasonable as applied to construction of the parking garage. 33 Mass. App. Ct. at 585.[12]

4. *Future projects.* We also agree with the Appeals Court's decision to modify the judgment by deleting therefrom language declaring that Medford cannot apply ordinance requirements to future construction projects in the core area of Tufts' campus or to future projects similar to Wessell, Olin, or the parking garage. Whether requirements of a local zoning law are reasonable cannot be decided in the abstract. The central question is whether application of the requirements to a specific project in a particular setting furthers legitimate municipal concerns to a sufficient extent to warrant requiring an educational institution, a use granted special protected status by the Dover Amendment, to alter its development plans. As the Appeals Court correctly stated, this "is essentially a fact-based determination, one that cannot properly be made for possible future construction projects not detailed in the evidence." 33 Mass. App. Ct. at 583.

Tufts argues nonetheless that the Appeals Court's deletion from the judgment of references to future, speculative projects is inconsistent with the scope of G. L. c. 240,

---

[12]The Appeals Court went on to observe that, although Tufts had not proved the ordinance unreasonable for purposes of the Dover Amendment, it might nonetheless be entitled under G. L. c. 40A, § 10, to a variance from the setback requirement because of the topography of the Boston Avenue site. It is obvious that the Appeals Court's conclusion that the setback requirement was reasonable did not rest on the possible availability of a variance for the structure. The Appeals Court properly observed that, even though Tufts had failed to prove the setback ordinance unreasonable as applied to the parking garage (for the reasons explained above), the particular characteristics of the lot might nonetheless entitle Tufts to obtain a variance. See *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290 (1972) (variance granted due in part to sloping lot and increased cost of compliance); *Broderick* v. *Board of Appeal of Boston*, 361 Mass. 472 (1972) (same). Tufts thus has an independent means of seeking relief from application of the setback provision if it chooses to pursue the point.

§ 14A,[13] the statute that confers authority on the Land Court to pass on the validity of local zoning requirements. This argument misconstrues the nature of the showing an educational institution must make to prevail when seeking a determination under G. L. c. 240, § 14A, as to the reasonableness of applying a local zoning law to its property.

A local zoning law that improperly restricts an educational use by invalid means, such as by special permit process, may be challenged as invalid in all circumstances. In this case, for example, the Land Court judge properly declared invalid the site plan and special permit requirements of the ordinance as to present *and* future, unspecified projects on the Tufts campus. *The Bible Speaks* v. *Board of Appeals of Lenox, supra* at 32-33. The Appeals Court correctly did not disturb this aspect of the judgment. The other requirements of the ordinance (parking, setback and dimensional regulations) challenged by Tufts do not facially discriminate against educational uses and are presumptively valid under the proviso to the Dover Amendment. The relief sought by Tufts pursuant to G. L. c. 240, § 14A, was a determination that, *as applied,*

---

[13]In full, G. L. c. 240, § 14A, as amended by St. 1975, c. 808, § 5, provides: "The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter [40A] or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition. The right to file and prosecute such a petition shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for, nor by the fact that no architects' plans or drawings for such erection, alteration, improvement or repair have been prepared. The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

the regulations were unreasonable. As has been said, like certain other kinds of challenges to the applicability of a local zoning law, this relief presents a question that can be properly resolved only by reference to specific facts. See *Sinn* v. *Selectmen of Acton,* 357 Mass. 606, 610 (1970) (validity of exemption of all municipal uses from use regulations "can be determined only by examining its application in particular cases"); *Aronson* v. *Sharon,* 346 Mass. 598, 603 (1964) (whether by-law is sustainable exercise of municipality's police powers or a deprivation of private property without compensation "often depends upon the facts of the particular case"). See *Southern New England Conference Ass'n of Seventh-Day Adventists* v. *Burlington,* 21 Mass. App. Ct. 701, 710 (1986). There the Appeals Court declined to rule whether boundary established by wetlands by-law was valid as applied to the church's land, stating: "In the absence of any evidence bearing on the issue of the lawfulness of the application of the by-law to set the wetlands boundary, any attempt at decision on this record would require speculation and would be unfair to one party or the other." The Appeals Court properly concluded that the Land Court's rulings embodied in the judgment as to future, unspecified, projects of Tufts lacked a proper factual foundation, and that such projects were not an appropriate subject for relief pursuant to G. L. c. 240, § 14A.

5. *Disposition.* The judgment is amended, in numbered paragraph 2, by striking the words, "and any other future structures or additions which may be similarly situated," and by striking numbered paragraphs 3, 4, and 5. The judgment is also amended to declare that the parking requirements of the ordinance are not invalid, and that as applied to Wessell these requirements can be met by construction of the requisite number of spaces in the proposed Boston Avenue parking garage or by an equivalent solution which satisfies the requirements. As so amended, the judgment is affirmed. The order defining the phrase "core campus" is vacated.

*So ordered.*

O'CONNOR, J. (concurring in part and dissenting in part). Statute 1950, c. 325, § 1, entitled "An Act prohibiting discriminatory zoning by-laws and ordinances," amended G. L. c. 40, § 25, a predecessor of G. L. c. 40A, § 3, by adding the following words: "No by-law or ordinance which prohibits or limits the use of land for any church or other religious purpose or which prohibits or limits the use of land for any religious, sectarian or denominational educational purpose shall be valid." In *Attorney Gen.* v. *Dover*, 327 Mass. 601 (1951), the court held that a town of Dover zoning by-law prohibiting the erection, alteration, or use of a building in a residential district for a sectarian educational use was invalid under St. 1950, c. 325, § 1. That act subsequently became known as the Dover Amendment. *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 27 n.10 (1979). Statute 1950, c. 325, § 1, was susceptible of an interpretation that would invalidate any zoning ordinance or by-law (regulation) that would have imposed on a sectarian, educational use any requirement concerning bulk and height of structures, yard size, lot area, setback, open space, building coverage or parking area. Indeed, that construction appears to have been urged by the plaintiff, and accepted by the Land Court judge, in *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 614 (1966) ("The college claims to be exempt from art. VII, § 2 [an ordinance requiring off-street parking], by reason of G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1, which provides 'that no ordinance or by-law which prohibits or limits the use of land for any church or other religious purpose or for any educational purpose which is religious, sectarian, denominational or public shall be valid'").

By St. 1975, c. 808, § 3, the Legislature struck out G. L. c. 40A and inserted a new chapter 40A in its place. The new c. 40A provides in relevant part, "No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes on land owned or leased by the commonwealth or any of its agencies, subdivisions or bodies politic or by a religious

sect or denomination, or by a nonprofit educational corporation; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements." That provision, were it to be construed without reference to the proviso, would present the same ambiguity that was present in the Dover Amendment, St. 1950, c. 325, § 1. Absent the proviso, the language of the statute could fairly be construed to mean that any requirement as to bulk and height of structures, yard size, lot area, setback, open space, building coverage or parking area, imposed on parcels of land devoted to religious or educational uses, is unauthorized. The obvious purpose of the proviso is to make clear that such requirements, if not intentionally or in practical effect discriminatory against the protected uses, and if rationally related to the purposes of zoning regulations enumerated in St. 1975, c. 808, § 2A, are authorized, valid, and enforceable without reference to the use to which a particular parcel is put.[1,2]

---

[1] The court incorrectly states, *ante* at 758 n.6, that "[i]f the approach suggested by the dissent is followed, a set of facially neutral zoning requirements could be adopted that would, in practice, prevent almost any educational use of land." To the contrary, if the approach suggested by the dissent were to be followed, zoning regulations, such as those at issue in *Sisters of the Holy Cross of Massachusetts* v. *Brookline*, 347 Mass. 486 (1964), that would "in practice, prevent almost any educational use of land" would, for that very reason, be discriminatory against a protected use, and would therefore be unauthorized (invalid).

[2] The court also states, *ante* at 758 n.6, that "[i]n maintaining that facially neutral zoning requirements automatically can be applied to an educational use, the dissent fails to take into account" Report, 1972 House Doc. No. 5009. It is true that I do not consider that piece of legislative history significant. "Only if the statute is ambiguous, or couched in terms that suggests that [the court] do so, [does the court] look beyond the express statutory language." *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 116 (1988). Neither condition for looking beyond the express statutory language is present here. However, even if one were to consider Report, 1972 House Doc. No. 5009, it would not suggest that the Legislature intended by St. 1975, c. 808, § 3, to discriminate *in favor* of protected uses with respect to parking and setback and similar restrictions. The relevant rec-

Nothing in G. L. c. 40A suggests that the Legislature intended to discriminate *in favor* of religious and educational uses. Yet, if the court is right in concluding that, in certain circumstances, a trial judge or appellate court must exempt a parcel, which is devoted to a protected use, from zoning regulations that are binding on parcels devoted to all other uses, such discrimination results. Surely, if parcels not committed to protected uses must comply with zoning regulations concerning off-street parking, setback of buildings, lot area and the like, regardless of the difficulty of compliance, but an educational institution is exempt if it demonstrates that "compliance would substantially diminish or detract from the usefulness of a proposed structure, or impair the character of the institution's campus, without appreciably advancing the municipality's legitimate concerns," or that compliance would result in "excessive cost . . . without significant gain in terms of municipal concerns," as the court states, *ante* at 759-760, discrimination occurs of a type that is the reverse of the discrimination targeted by the Dover Amendment.

General Laws c. 40A, § 3, is clear. No zoning ordinance or by-law may "prohibit, regulate or restrict the use of land or structures for . . . educational purposes on land owned or leased by . . . a nonprofit educational corporation" like Tufts College, but "such land or structures may be subject to reasonable regulations [that is, reasonable regulations, although not mandated, are authorized, and such land or structures are subject to them] concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements." Nothing in chapter 40A authorizes a judge or a court to declare facially reasonable non-discriminatory regulations inapplicable to a particular parcel, or to exempt a particular parcel from them, whenever the judge or court, acting as a master planner, decides that the "application of the requirements to a specific project in a particular setting

ommendation contained in the Report at page 26 may be found in the appendix to this opinion.

[would not] further[] legitimate municipal concerns to a sufficient extent to warrant" application and enforcement of the regulations. *Ante* at 764.

The challenged requirements of the ordinance in this case are reasonable. They do not discriminate against statutorily protected land uses either by expressed intention or in practical operation. The ordinance is use-neutral. Furthermore, the ordinance is rationally related to legitimate municipal zoning objectives. No one appears to contend otherwise. In my view, contrary to the thrust of the court's opinion, the court would have no right to declare the challenged requirements inapplicable to the Tufts College property. For that reason, and not for the reasons articulated by the court, I am satisfied that the challenged requirements apply in this case. Accordingly, to the extent that the court orders numbered paragraphs 3, 4 and 5 struck from the judgment, thereby achieving that result, I concur with the order. However, because the order striking language from paragraph 2 of the judgment is premised incorrectly, I believe, on the idea that future applicability of the challenged regulations must depend on facts yet to be developed and on a "balancing" of the extent of the imposition on the use represented thereby compared to municipal concerns, I dissent from the court's order insofar as it strikes language from paragraph 2 of the judgment.

APPENDIX.

HOUSE - No. 5009

"1. *Dover Amendment.* It is unfortunate that the present state of the law is such that some communities may have legitimate doubts about the validity of regulations which would impose reasonable controls on institutions presently covered by the Dover amendment. The Department would encourage the use of such control where essential to the well-being of the adjacent neighborhood, and where the regulation will not seriously jeopardize the mission of the protected institutions. Thus, the Department proposes to clarify the present language so as to achieve the aims of the general court in passing the original amendment while at the same time precluding unwise restrictions on the power of the communities to regulate the land use activities of churches and educational institutions. The pro-

posed language, for example, would specifically authorize the imposition of reasonable regulations concerning density or intensity of occupancy, bulk and height [of] structures, yards and setbacks, as well as limitations upon the location of assessory uses which traditionally have tended to be detrimental to adjacent property. Ideally, this should be accomplished by adopting regulations specifically designed to apply to uses protected by the Dover Amendment located in otherwise restricted zones, thus avoiding the problem of attempting to apply the *same* bulk regulations to the protected uses as ordinarily apply to other permitted uses in the zone. For example, instead of attempting to apply residential dimensional regulations to churches or schools located in a residential zone (See, *Sisters of the Holy Cross* v. *Town of Brookline*, 347 Mass. 486 [1964]) the by-law or ordinance should establish dimensional regulations specifically applicable to churches or schools located in such zones."