SHARON BOARD OF LIBRARY TRUSTEES vs. BRAHMACHARI, MISC 20-000525

































 
 TOWN OF SHARON BOARD OF LIBRARY TRUSTEES, Plaintiff, v. ABHIJIT BRAHMACHARI, CHAIRMAN, JOSEPH GARBER, STEPHEN WEISS, as they are members of the TOWN OF SHARON ZONING BOARD OF APPEALS, and the TOWN OF SHARON, Defendants
 MISC 20-000525 
 SEPTEMBER 2, 2021
NORFOLK, ss.
SMITH, J.
DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT














 This case pits the Town of Sharon Board of Library Trustees (the "Trustees") against the Town of Sharon Zoning Board of Appeals (the "Board") over whether to build a new public library at 1 School Street in Sharon. Despite the fact that the project appears to have overwhelming public support, the Board denied the Trustees' application for zoning relief in a decision that reveals an internecine battle that began with the Trustees' submission of its application to the Board and continues with this appeal. Although the project enjoys special protection as an educational use under the Dover Amendment, the Board denied the project ostensibly because of concerns it had about the size of the library and its impact on the surrounding area. 





 The Trustees appealed the Board's decision in a three-count complaint that alleged a zoning appeal under G.L. c.40A, §17 in Count I, a request for a declaration under G.L. c.240, §14A that the bylaw provisions relied on by the Board are either inapplicable to the project or, if applicable, are unreasonable as they pertain to the project in Count II, and a claim that the Board acted in bad faith when it denied the project in Count III. 





 The Trustees now seek summary judgment on Counts I and II arguing that the project should be approved as proposed because it is a protected educational use over which the Board has no authority to refuse to issue the necessary permits. The Board counters that the project unreasonably interferes with the surrounding residential neighborhood, that its denial was justified, and, regardless, there are too many material disputes of fact for the court to rule on the propriety of its decision by summary judgment. 





 For the reasons set forth in this decision, the Trustees' motion is allowed in part and denied in part. 





Background 





 The Trustees proposed construction of a public library on the town-owned property known as 1 School Street, Sharon. The project contemplates a two-story library that will have a gross building area of 29,462 square feet. The undisputed facts that are relevant to my decision are contained in the documents generated by the parties during the public hearing process before the Board. [Note 1]





 1. In September 2014, the Town of Sharon (the "Town") formed a Library Building and Selection Committee for the purposes of exploring the siting and construction of a new public library. Fact No. 26. 





 2. In November 2014, the Sharon town meeting appropriated funds to support the Library Building and Selection Committee and, in 2015, the committee hired a library building consultant to assist in creating a building program to be used to inform the eventual schematic/programmatic design of the new library. Fact No. 27. 





 3. At various times during 2015 and 2016, the Library Building and Selection Committee, its library building consultant, the Trustees, and various other officials and interested parties conducted surveys, met with various groups, conducted interviews, and held outreach and information gathering events along with other diligence to determine the Town's needs to be considered in the design of the new library. Fact No. 28. 





 4. Based on those community engagement activities, the Library Building and Selection Committee, with the input of its library building consultant, established a program of elements that it recommended be included in the development of the new library. Fact No. 30; Exh. 24. 





 5. In 2016, the Trustees hired a project manager and architect to create a preliminary schematic design based on the building program. This preliminary schematic design was only a feasibility study based on the elements contained in the building program. The resulting design was a building with a gross area of 20,245 square feet. Fact Nos. 32-33. 





 6. When the preliminary schematic design drawings progressed to the more detailed schematic design, the building size increased to approximately 25,668 square feet. Fact Nos. 32- 33. 





 7. At the time of the creation of the schematic design drawings, there had been no decision on the location for the new library, but after a review of multiple available public parcels, the Trustees settled on either 1 School Street or 11 North Main Street as possibilities. Fact Nos. 34, 39. 





 8. On May 3, 2016, the town meeting voted to authorize the Trustees to approve the library project and to apply for any state grants that were available for an approved public library project. Fact Nos. 36-37. 





 9. On August 9, 2016, after the Town of Sharon Historical Commission did not support approval for a new library at 11 North Main Street, the Select Board voted unanimously to support the use of 1 School Street as the location of the new library. Fact No. 39. 





 10. 1 School Street contains approximately 38,293 square feet of land which is improved with an existing building that is 2,986 square feet in area with associated parking related amenities. Fact Nos. 6, 8. 





 11. 1 School Street is in the Town's Residential District B and the Water Resources Protection District, which is an overlay district. Fact No. 5. 





 12. On January 10, 2017, the Trustees applied to the Massachusetts Board of Library Commissioners (the "MBLC") for a grant to help pay for the cost of developing the library based on the preliminary/programmatic design of the project. Fact Nos. 40-41. 





 13. On May 6, 2019, the town meeting approved an article which appropriated the sum of $18,000,000 to be expended for the development of the library as depicted in the schematic design drawings, which included the costs of architectural and engineering services necessary to create the final construction plans. Fact Nos. 42-43. 





 14. On July 11, 2019, the MBLC awarded the Town of Sharon a grant in the amount of $7,485,943.00 for the project. The MBLC and the Town subsequently entered into a grant agreement which contained the terms of the grant and the obligations of the Town to remain eligible for the grant. Fact Nos. 44-46.





 15. Following the Town's acceptance of the MBLC grant, the project consultants were authorized to prepare final design drawings. That process was overseen by the Sharon Standing Building Committee with participation from the Trustees and the public, as well as review, changes, and acceptance by the MBLC as the design progressed to 100% Design Drawings. Fact No. 48. 





 16. The final design drawings depicted a two-story building with a footprint of 11,971 square feet and gross building area 29,462 square feet. Fact No. 51. 





 17. On April 13, 2020, the Trustees filed an application with the Board for approval of the project which requested relief from the following five provisions of the Sharon zoning bylaw: 





 (i) minimum lot area requirement within the Water Resources Protection District of 60,000 square feet where the lot has 38,293 square feet - special permit; 





 (ii) minimum front yard requirement of 70 feet from North Main Street where the project proposed 52 feet and 50 feet from School Street where the project proposed 30 feet - variance; 





 (iii) percentage of building coverage requirement in a Residential District B of 25% where the project proposed 32% - variance; 





 (iv) percentage of impervious coverage requirement in a Water Resources Protection District of 15% where project proposed 74% - special permit; and 





 (v) the natural vegetation coverage requirement with the Water Resources Protection District of 40% where the project has no coverage - special permit. The application also noted that the library was an educational use and, therefore, subject to the protections of the Dover Amendment, G.L. c.40A, §3. Fact Nos. 52-63; Exh. 6.





 18. The public hearing opened on May 13, 2020, continued on June 10, 2020, and closed on July 8, 2020. Fact Nos. 66. 





 19. In its application, the Trustees submitted the 100% Design Development Drawings prepared by its civil engineer DeVellis Zrein, Inc. and other supporting engineering material. Exh. 15-16. Over the course of the public hearing process, the Trustees provided supplemental information about the project which included memoranda from the Trustees' architect, LLB Architects, and its project manager, Design Technique, that explained various aspects of the design and the justification for the Trustees' request for approval notwithstanding the project's lack of strict compliance with zoning bylaw. The project engineer also provided a memorandum based on its "Drainage Report and Stormwater Management Plan" in an effort to further explain the proposed stormwater management system and to demonstrate that the system provided adequate protection of groundwater for construction in the Groundwater Protection District. Regarding traffic, the Trustees submitted a Traffic Impact Assessment and the Pleasant Street/School Street Intersection Supplemental Analysis prepared by their traffic engineering consultant. Finally, the Trustees provided written answers to 26 questions raised by the Board and the public during the opening night of the public hearing. Exh. 16. 





 20. The Trustees also submitted a so-called "Plan B" for the library which was a feasibility schematic redesign that depicted a building that complied with the required setbacks and percentage of building coverage, but still required a special permit for lot size and percentage of impervious coverage. The primary difference in the Plan B design was that it moved the parking area from the rear and side of the proposed building to the front of the site. Plan B also called for a slightly taller building with a smaller footprint but increased the percentage of impervious coverage on the property as compared to the proposed design. Exh. 16. 





 21. After closing the hearing on July 8, 2020, the Board voted to deny the project. However, the Board did not issue a written decision until November 5, 2020. Exh. 17. 





Standard of Review 





 Summary judgment is appropriate where there are no issues of genuine material fact and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275 , 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 711 (1991). In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the summary judgment motion. White v. Univ. of Mass. at Boston, 410 Mass. 553 , 556-557 (1991). To prevail, the moving party must affirmatively demonstrate that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14 , 17 (1989). 





The Dover Amendment 





 The review of the Board's decision must be undertaken in light of the protections afforded a library project under G.L. c.40A, §3, commonly referred to as the Dover Amendment. "The Dover Amendment bars the adoption of a zoning ordinance or by-law that seeks to prohibit or restrict the use of land for educational purposes. However, a proviso to the statute authorizes a municipality to adopt and apply 'reasonable regulations' concerning bulk, dimensions, open space and parking, to land and structures for which an educational use is proposed." Trustees of Tufts College v. Medford, 415 Mass. 753 , 757 (1993). In this way, the Dover Amendment aims to strike a balance between preventing local discrimination against an educational use and legitimate municipal goals advanced by reasonable zoning regulations. Id. at 757. Therefore,reasonable dimensional requirements still apply to an educational use so long as, on balance, they serve to fulfill legitimate municipal concerns. Id. at 758. 





 In the Tufts case, the SJC addressed what constitutes reasonable dimensional regulations under the Dover Amendment and explained that the proponent of the educational use bears the burden of proving that the local requirements are unreasonable as applied to the proposed project. Local dimensional requirements are unreasonable where compliance "would substantially diminish or detract from the usefulness" of the project "without appreciably advancing the municipality's legitimate concerns." Id. at 759-760. The question of reasonableness will depend on the facts of each case. Id. at 759. In Tufts, the court found that a fifty-foot setback for a multilevel parking garage and the parking and loading dock requirements for a college library were reasonable regulations because their imposition would not frustrate the project. Id. at 762-764. 





 The Appeals Court in Trustees of Boston College v. Board of Aldermen of Newton, 58 Mass. App. Ct. 794 (2003) considered whether the Dover Amendment would permit the imposition of the special permit procedure under the Newton zoning bylaw on a proposed project for the middle campus of Boston College. The court ruled that the special permit procedure, in itself, was not invalid in all circumstances because of the protections provided to educational uses by Dover Amendment. Id. at 800. Rather, whether under the special permit procedure or not, the Dover Amendment allows the local board to only apply reasonable density, dimensional, and parking regulations to the proposed educational use. Id. "A municipality may not, however, 'through the guise of regulating bulk and dimensional requirements under the enabling statute, proceed to nullify the use exemption permitted to an educational institution'" Id. (quoting The Bible Speaks v. Bd. of Appeals of Lenox, 8 Mass. App. Ct. 19 , 31 (1979)). 





 In this case, it is undisputed that the library is a permitted educational use at 1 School Street by both the Dover Amendment and the Sharon zoning bylaw. As a Dover-protected use, the project is entitled to special treatment and need not comply with local zoning if such compliance will substantially diminish or detract from the usefulness of the project. As such, the Board was charged with the task of balancing the protected educational use proposed by the Trustees against the need for reasonable dimensional limitations that would advance a legitimate municipal concern. 





 The 1 School Street property is comprised of 38,293 square feet of land that is improved with a 1-story stucco building that once served as a school. The Trustees proposed a building whose design was driven by a planning process that took place over some 2 years that included public surveys, group meetings, interviews, input from the Select Board and Historical Commission, and community outreach and information gathering events that resulted in a list of requirements, referred to as the "building program," that the Trustees concluded were important elements to be included in the design of the new library. Exh. 24. The resulting design does not strictly comply with the Sharon zoning bylaw. 





 In their motion, the Trustees argue that the Board must grant the necessary zoning relief and approve the project "as is" because it enjoys protected status as an educational use under the Dover Amendment. They claim that any dimensional changes imposed by the Board will nullify the project because, among other things, the grant agreement between the Town and the MBLC precludes design changes without risking the loss of the $7,455,793.00 grant. They also argue that any dimensional changes will not appreciably advance the local planning concerns of the Board. 





 The Trustees' argument is reinforced in certain respects by the selection of 1 School Street as the project site after a town-wide search of available properties even though this property does not meet the minimum lot size requirement in the Water Resources Protection district. This selection was made after the schematic drawings had been completed which depicted a building of 25,668 square feet. The selection of an undersized lot for this building design necessarily brought into play the need to relax dimensional limitations pertaining to lot coverage and setbacks if the new library was to include the elements of the building program that the Trustees deemed essential. 





 However, the Trustees are not entitled to a permit for the proposed project simply because the library is an educational use that enjoys protection under the Dover Amendment. Rather, they must establish that the dimensional requirements of the bylaw are unreasonable by showing that compliance will substantially diminish or detract from the usefulness of the proposed library without appreciably advancing the municipality's legitimate concerns. The Trustees attempted to make that showing with the materials it submitted, including the documents contained in Exhibit 16. 





 The Board, on the other hand, maintains that the Trustees did not provide sufficient evidence to demonstrate that applying the zoning bylaws to the project will detract from the project's usefulness. When the Board raised questions about the MBLC grant and whether the project design could be changed, an MBLC representative provided a letter that explained how the MBLC views requests for change to projects for which it has already approved grants. Exh. 20. Even with this information, the Board insisted that it needed more information about the design and whether changes were possible and declined to balance the usefulness of the project with local planning concerns as required by Tufts and Trustees of Boston College. Instead, the Board denied the project outright citing only general concerns about the impact of the project on the surrounding neighborhood. Exh. 17. That is a legally untenable basis on which to deny the library project. 





 The Board had a project in front of it. The Board's obligation was to approve the project as is or to impose reasonable dimensional regulations that struck the proper balance between the need for the new library and any legitimate municipal goals embodied in the zoning bylaw. Instead, the Board questioned the reason for a library that was larger than the original schematic design and intimated that the Trustees had been dishonest with the MBLC and the Board in presenting the needs of the project. The Board seems to have discounted the fact that the final design was the culmination of a lengthy process that was considered by, at least, two town meetings, involved input from the Select Board and the Historical Commission, and was intended to be consistent with the historical elements of the town center while being respectful of the neighbors' concerns. Indeed, the design proposes several measures which are intended to limit any intrusion into or interference with the neighboring properties such as siting the building in a location that is as far away from the neighboring properties as possible, erecting fencing or landscape screening along the project boundary with the neighborhood, installing special parking lot lighting which is intended to limit overflow onto abutting properties, and imposing limited hours for use of the library. Exh. 15, 16. 





 The design also addresses the building and lot coverage percentages and how the proposed stormwater management system meets or exceeds both state and local standards while substantially improving the existing conditions at the site. Exh. 16. As to the increased impervious area proposed by the Trustees, the evidence before the Board was that the proposed system provides complete recharge for a 100-year storm event while reducing the peak rate and volume of stormwater runoff as compared to the existing conditions. Exh. 16. Regarding the proposed septic system, the Board had evidence that the proposed system met Title V with no adverse impact on groundwater under the site or on flow from the site. Exh. 16. The traffic impact assessment demonstrated that the roadways and intersections in the area could accommodate any increase in traffic caused by the project while still maintaining a level of service A. Exh. 16. 





 At the request of the Board, the Trustees also submitted a so-called Plan B which demonstrated an alternative design that more closely complied with the dimensional requirements of the zoning bylaw. The Trustees asserted that Plan B was not preferred because the imposition of the dimensional controls would result in a slightly taller building, set closer to the abutting neighborhood, on a lot that still could not comply with the minimum lot size and maximum impervious percentage limitations for construction in the Groundwater Protection district. Exh. 16. The Board also had the opinion of its legal counsel that a redesign of the library was outside the scope of the May 2019 town meeting vote which had authorized the expenditure of $18,000,000.00 to build the new library proposed by the Trustees. Exh. 19. Finally, the Trustees represented that a redesign of the library would be extraordinarily expensive considering the previous expenditure of public funds to get the library design to the point of applying for approvals from the Board. Exh. 16. 





 Based on the summary judgment record, there was ample evidence before the Board to trigger its obligation to undertake the balancing test mandated by the Tufts and Trustees of Boston College cases and to render a decision on the merits of the project. To compound the problem of the Board's refusal to employ this balancing test, it chose to describe certain "adverse impacts" which it perceived the project would have on the surrounding neighborhood in such vague terms that it leaves the court with the question of how seriously the Board considered the details of the project. It is not adequate for the Board to blithely state that "set-backs would be a substantial intrusion on the neighbors" or that "lot coverage differential is material and adverse" without providing any details or specificity as to how the neighborhood will be adversely affected or why the design features of the project that are intended to minimize its impact on surrounding properties are inadequate. Similarly, the decision comments that "parking is inadequate" and "will present an intrusion to the neighborhood" but does not explain why 30 on site parking spaces plus 42 spaces in the church parking lot across Main Street justifies denying the project particularly where there was evidence in the record that 25% of library patrons either walk or ride a bike when visiting. Finally, in the section of the decision called "Other issues of concern," the Board claims that it has stormwater runoff and groundwater quality concerns even though it did not request peer review of the engineering design until after the public hearing was closed and it had voted to deny the project in July 2020. 





 In reviewing the propriety of a zoning decision, this court must uphold that decision unless it is based on a legally untenable ground or is unreasonable, whimsical, capricious, or arbitrary. See Cape Ann Land Dev. Corp. v. City of Gloucester, 371 Mass. 19 , 23-24 (1976); Cumberland Farms of Conn., Inc. v. Zoning Bd. of Appeal of Attleborough, 359 Mass. 68 , 75-76 (1971); Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68 , 72-73 (2003). In this case, the Board declined to employ the balancing test mandated by the Tufts and Trustees of Boston College cases without sufficient justification. Its refusal to balance the need for the proposed library against reasonable dimensional concerns that would protect the neighborhood surrounding 1 School Street considering the record before it was a legally untenable basis on which to deny the project. 





 The Trustees' motion for summary judgment on Count I is allowed, and the Board's decision is annulled. The matter shall be remanded to the Board for further proceedings consistent with this decision. On remand, it is the expectation that the Trustees will present all the evidence in their possession that supports their assertion that the project, as designed, is necessary to accomplish the goals set out in the building program and that any changes to the design will not appreciably benefit any compelling municipal concerns raised by the Board. Likewise, the Board should employ the balancing test as described in Tufts and Trustees of Boston and make a decision on the merits of the project as proposed. If the Board has legitimate concerns about the engineering analyses concerning stormwater management and groundwater presented by the Trustees, retention of a peer review consultant may be reasonable. If the Board chooses to approve the project with any dimensional limitations, it must identify with particularity the municipal concerns which those limitations are intended to protect. 





 The motion for summary judgment on Count II is denied because there are material disputes of fact that preclude a determination under G.L. c.240, §14A that the bylaw provisions relied on by the Board are either inapplicable to the project or, if applicable, are unreasonable as they pertain to the project. In addition, there is a legal question about whether the Trustees must exhaust their administrative remedies before this court can address their claim under Count II. See Balcam v. Town of Hingham, 41 Mass. App. Ct. 260 , 266 (1996). 





Conclusion 





 For the foregoing reasons, the Motion for Summary Judgment of the Town of Sharon Board of Library Trustees is ALLOWED in part and DENIED in part. An order of remand will enter that is consistent with this Decision. 





So Ordered. 





FOOTNOTES
[Note 1] I will reference the undisputed facts by the number as set forth in the Plaintiff's Statement of Material Facts with the Defendant's Response unless otherwise noted. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.